THE ILLINOIS STEEL COMPANY

*v.*

JOHN MANN.          .

*Opinion filed November 8, 1897—Rehearing denied December 21, 1897.*

1. MASTER AND SERVANT—*servant discovering defects in appliances or danger in his surroundings should notify the master.* A servant, upon discovering defects in the machinery or appliances with which he works or danger in his surroundings, should notify the master of such danger or defects.

2. SAME—*upon master's promise to repair, servant may remain in service a reasonable time.* Where the master, upon being notified by his servant of defects in machinery or appliances or danger in the surroundings of the servant which increase the hazard of the latter's employment, promises to repair the defects or remove the danger, the servant may remain in the service a reasonable time without thereby assuming the increased risk.

3. SAME—*time which servant may remain is a reasonable time for the master to fulfill his promise.* The reasonable time for which a servant is entitled to remain in service after his master's promise to repair defects or remedy dangerous surroundings, is such time as would be reasonably sufficient for the master to fulfill his promise. (CARTER, MAGRUDER and BOGGS, JJ., dissenting.)

4. SAME—*rule that servant may rely on master's promise to repair is not applicable to all cases.* The rule that a servant may remain in service a reasonable time relying upon his master's promise to repair defects, does not apply where the servant is performing ordinary labor not requiring intricate machinery and appliances, and has an equal knowledge with the master of all existing defects.

*Illinois Steel Co.* v. *Mann,* 67 Ill. App. 66, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This was an action for personal injuries, brought by John Mann, an employee of the Illinois Steel Company, in the circuit court of Cook county, against the corporation which employed him, to recover for injuries alleged to have been received by him while in the employ of the defendant, in its rolling mills, about November, 1892.

The plaintiff was, and had been for about twenty-six years, in the employ of the defendant in the capacity of a heater, his duties being to place steel ingots into a furnace, turning them with an iron bar nine or ten feet long, known as a "paddle," and finally taking them from the furnace when the process of heating was finished. The paddle, which grows hot while in use, is cooled in a long water trough, known as a "bosh." Ordinarily the heater has a helper, who assists him in taking the paddle out of the bosh and putting it into the furnace. Plaintiff had such a helper, but either on account of his inexperience, or a dislike of the plaintiff towards him, or for some other reason immaterial, Mann, on the day in question, attempted to perform his duties without the assistance of this helper. The floor in front of the furnace where he was required to work was made of cast-iron plates, one inch in thickness and about twenty-six by twenty inches in size. These plates, when first put down, are straight and level, but in a short time, from exposure to the great heat of the furnace above and through counter exposure to dampness of the ground beneath, become warped, so that they are higher in some places than others. Such was the condition of the iron floor in front of the furnace where plaintiff was required to do his work, and also around the bosh or trough where the paddle was cooled. These higher places, from more frequent contact of those using the floor, become very smooth,—as the evidence shows, "smooth as glass." The floor around the bosh was more particularly subjected to the exposure of the dampness underneath, from the fact that water was frequently thrown from this trough upon the floor as the paddle was pulled out of the bosh. The record shows the floor at that place was most of the time wet from this cause. The plaintiff, while attempting, without the assistance of his helper, to pull the paddle out of the bosh, and while walking backward over the iron plates, slipped on one of the smooth places of the floor and fell, receiv-

ing the injuries complained of. His own statement as to this injury is as follows:

"I had just about completed pulling the paddle out of the bosh, when, just at the instant I stopped, I pulled the paddle like this and went to lay it on the rail, and my feet went out like that. I stopped walking, and as I stood there tried to pull the paddle back and my feet went out.

Q. "And very likely it was the pull that you gave the paddle that started your feet, was it not?

A. "Well, I don't know about that; I don't know about that; that I couldn't say. I know I fell and the paddle fell on me. I know both my feet went out at once."

It appears from the record in this case that the uneven, smooth and slippery condition of the floor had existed for at least a year prior to this accident, and the condition was fully known to the plaintiff. He had on several occasions during the year notified his foreman of the dangerous condition of this floor, and, while it is not disputed he was fully aware of such dangerous condition, it is urged the defendant had promised to repair the floor, and relying upon this promise the plaintiff had continued in its employ.

A jury in the circuit court of Cook county rendered judgment in favor of the plaintiff for the sum of $5000. This judgment was by the Appellate Court for the First District affirmed, and, on appeal, comes to this court.

E. PARMALEE PRENTICE, for appellant:

A promise to repair does not relieve an employee from the assumption of hazard, where the danger arises from the ordinary use of familiar agencies. *District of Columbia v. McElligot,* 117 U. S. 621; Bailey on Master's Liability, 209-211; *Marsh v. Chickering,* 101 N. Y. 400; *Corcoran v. Gas Light Co.* 81 Wis. 193; *Gowen v. Harley,* 56 Fed. Rep. 974; *Tuttle v. Railway Co.* 122 U. S. 189; *Hayden v. Manufacturing Co.* 29 Conn. 548; *Richards v. Rough,* 53 Mich. 212.

If there had been a sufficiently definite promise, nevertheless plaintiff did not rely upon it. He admits that his conduct was unaffected by any promise. The promise, then, cannot be the basis of a recovery. *Taylor* v. *Felsing*, 164 Ill. 331; 2 Thompson on Negligence, 1148; *Railroad Co.* v. *Orr*, 84 Ind. 50; *Counsel* v. *Hall*, 145 Mass. 468; *Railroad Co.* v. *Liehe*, 17 Col. 280.

A servant has no right to rely upon the master's promise to repair, beyond a reasonable time. *Swift & Co.* v. *Madden*, 165 Ill. 41; *Taylor* v. *Felsing*, 164 id. 331; *Drop Forge Co.* v. *VanDam*, 149 id. 337; *Brick Co.* v. *Sobkowiak*, 148 id. 573; *Stafford* v. *Railroad Co.* 114 id. 244; *Furnace Co.* v. *Abend*, 107 id. 44; *Railroad Co.* v. *Watson*, 114 Ind. 20; *Railroad Co.* v. *Drew*, 59 Tex. 10; *Stephenson* v. *Duncan*, 73 Wis. 404; *Kroy* v. *Railroad Co.* 32 Iowa, 357; *Greenleaf* v. *Railroad Co.* 33 id. 52; *Muldowney* v. *Railroad Co.* 39 id. 615; *Lumley* v. *Caswell*, 47 id. 159; *Way* v. *Railroad Co.* 40 id. 341; *Russell* v. *Tillotson*, 140 Mass. 201; *Linch* v. *Sagmore Manf. Co.* 143 id. 206; *Hart* v. *May*, 144 id. 186; *Buzzell* v. *Luconia Manf. Co.* 48 Me. 113; *Sweeney* v. *Berlin*, 101 N. Y. 520.

A definite promise by the master to repair defects, relied on for a reasonable time, does not absolutely relieve the servant from the assumption of hazard as a matter of law, but raises a question for the jury. *Brick Co.* v. *Sobkowiak*, 148 Ill. 573; *Counsel* v. *Hall*, 145 Mass. 468; Beach on Cont. Negligence, sec. 372, note 3; *District of Columbia* v. *McElligot*, 117 U. S. 621; *Railroad Co.* v. *Donnelly*, 70 Tex. 371.

GEORGE B. FINCH, for appellee:

A peremptory instruction should only be given when the evidence, with all the legitimate and natural inferences to be drawn therefrom, is wholly insufficient to sustain a verdict for the plaintiff. Where there is evidence tending to sustain the issues on behalf of the plaintiff, the weight to be given thereto must be submitted to the jury. *Railway Co.* v. *Richards*, 152 Ill. 59; *Purdy* v. *Hall*,

134 id. 298; *Simmons* v. *Railroad Co.* 110 id. 340; *Pullman Car Co.* v. *Laack,* 143 id. 242; *Railway Co.* v. *Callaghan,* 157 id. 406; *Railway Co.* v. *Smith,* 162 id. 185; *Post* v. *Bank,* 159 id. 421.

If the servant notifies the master of defects and the master promises to make the needed repairs, the master thereby takes on himself the responsibility of any accident caused by such defect, happening within such time as the servant may reasonably rely on such promise. *Holms* v. *Clark,* 6 H. & N. 348; *Furnace Co.* v. *Abend,* 107 Ill. 44; *Brick Co.* v. *Sobkowiak,* 148 id. 573; *Weber Wagon Co.* v. *Kehl,* 139 id. 644.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

Of the assignments of error made on this record and argued by appellant there is only one proper for this court to consider. The question of the negligence of appellant, and some other questions argued by counsel for appellant, are those of fact, which have been settled by the judgment of the Appellate Court.

Error is assigned by the appellant on the refusal of the trial court to give to the jury, on the trial of this cause, the following instruction:

"The court instructs the jury that an employee who continues in the service of his employer after notice of a defect increasing the danger of the service, assumes the risk as increased by the defect, unless the master promised to remedy the defect; and in the event that the master does so promise, the servant may, while relying upon such promise, remain in the service of the master only for such a time thereafter as would be reasonably sufficient to enable the master to remedy the defect, and that if the master does not, within a reasonable time after such promise, remedy the defect, then and in such event, if the servant continues still in the employ of the master, he assumes the risk as increased by the defect; and the court therefore instructs the jury, that if they believe, from the

evidence in this case, that the standing upon which the plaintiff worked while in the employ of the defendant was defective, that the defendant promised to remedy the same but failed to do so within a reasonable time after such promise, and that the plaintiff continued thereafter to work for the defendant knowing that the defendant had failed to remedy the defect within a reasonable time after such promise, then and in such event the court instructs the jury that the plaintiff assumed the additional risk of the defect in the condition of the floor, and if the jury so finds they will return their verdict for the defendant."

This instruction was refused by the trial court, and it is practically admitted that no other instruction involving the same principle was given to the jury, for the reason, as counsel for appellee insists, it does not contain a correct expression of the law of this State. It is urged as an objection to this instruction that it would inform the jury that the servant may, while relying upon the promises of the master to repair a defect, remain in the service of the master only for such time thereafter as would be reasonable and sufficient to enable the master to remedy the defect, and that if the master does not, within a reasonable time after such promise, remedy the defect, then and in such event, if the servant still continues in the employ of the master, he assumes the risk as increased by the defect of which he himself had knowledge. The trial court not only refused this instruction, but, by another instruction requested by the plaintiff, told the jury that if the defendant promised to repair the defect, and he was led to believe and expect that the floor would soon be repaired, and that he continued to remain in the employment of the defendant up to the time he was injured, irrespective of whether or not such time was a reasonable one in which the defect might have been remedied, the plaintiff was entitled to recover.

It is a recognized rule that it is the duty of the master to furnish to the servant reasonably safe machinery and appliances with which to perform his work, but when the servant discovers that the service has become more dangerous than he anticipated when he entered the employment of the master, or when he discovers defects in the machinery or appliances which make it unsafe for him to longer continue in the employ of the master, or from any other cause he concludes there is danger in continuing further in the service, it is his duty to notify the master of such danger or of such defects in the machinery or appliances connected with his work, and, upon the master being notified, the servant has the right to continue in the employ of the master for a reasonable time awaiting the remedy of such defect. He has the right to rely for a reasonable time upon the promise of the master that such defect in the machinery, appliances or other surroundings connected with his work will be repaired and the machinery made safe, and the right to expect that such promise so made by the master will be fulfilled. If such expectation on the part of the servant, however, is not fulfilled and the defect remedied by the master within a reasonable time, and the servant has full knowledge of the dangerous condition of his machinery, appliances or surroundings, and that he is subjected at all times to prospective injury, it is his duty to quit the service of the master, and not 'subject himself to further danger.

In the case of *District of Columbia* v. *McElligot*, 117 U. S. 621, the cause arose out of personal injuries received by a laborer while at work upon a bank of gravel. The evidence tended to show he discovered the bank was in an unsafe condition and asked the supervisor for a man to watch it, whereupon he received assurance such would be done. No such assistance, however was given, but the laborer continued to work for a half day thereafter, knowing the danger, when the bank fell and severely injured him. It was held by the court in that case it was the duty

of the laborer, having knowledge of the dangerous con-
dition of the bank, to exercise diligence and care in pro-
tecting himself, without regard to any assurance which
he might have received from his employer.

The rule in the above case is stronger than the rule
in this State. As a general rule, courts will consider that
the master who employs a servant has a better and more
comprehensive knowledge of the machinery and materi-
als to be used than the employee. The servant has the
right to presume that the materials and appliances which
are furnished to him in the performance of his duty are
sufficient therefor. This rule, however, is not applicable
to all cases, and where the servant has equal knowledge
with the master and a full knowledge of all existing de-
fects, and more especially in the performance of ordinary
labor in which no intricate machinery is involved, the
rule is not applicable. In *Marsh* v. *Chickering*, 101 N. Y.
400, this exception is recognized, and it is said that the
facts that a laborer using ordinary tools and appliances
notified the master of a defect of which the servant him-
self had full knowledge, and asked it to be remedied, and
the master promised so to do, do not render the master
responsible. The rule in this State is more liberal, how-
ever, and permits the servant to remain in the employ
of the master for a reasonable time awaiting the remedy
of such defects.

In *Corcoran* v. *Milwaukee Gas Light Co.* 51 Wis. 191, the
plaintiff had been employed by the defendant in making
general repairs about its building, and had occasionally
been required to use a ladder. Upon his statement that
the ladder was not safe, the foreman had promised to
have a safe ladder provided. Relying upon such promise
the plaintiff continued in the employ of the defendant,
but the foreman failed to provide such safe ladder. The
plaintiff was ordered by the foreman to ascend the ladder
and make certain repairs, and, the ladder being unsafe
and the floor on which it rested being slippery, the plain-

tiff was injured by the falling of the ladder while ascending it. The court in that case held no liability, saying it has been held by it that in a proper case the servant may rely upon such assurance to remedy defects for a reasonable time, but if he remains in such service after the expiration of such reasonable time he is thereby deemed to waive his objection and assume the risk. To the same effect, also, is *Gowan* v. *Harley,* 56 Fed. Rep. 974. In that case the court says: "The rule that the master is responsible for damages resulting to the servant from defects in machinery and appliances of which the servant has notified him and which he has promised to repair, governs cases in which machinery or tools that are used in the work are discovered to be dangerously defective while in use, and to cases in which tools and machinery are necessary for the safe performance of the work. It has no application to a case where the service rendered is simply manual labor, without tools and machinery, and where no such tools or appliances are necessary to the performance of the work with a reasonable degree of safety."

In *Stephenson* v. *Duncan,* 73 Wis. 404, it was held that the servant has the right to abandon the service because it is dangerous, but that he may refrain for a reasonable time from so doing in consequence of assurances by the master that the danger shall be remedied, and he will not be held to thereby assume the risk. But if he continues in the service for a longer time than is reasonable to allow for the performance of the master's promise, he will be deemed to have waived his objection and assumed the risk.

In the case of *Missouri Furnace Co.* v. *Abend,* 107 Ill. 44, this court said (p. 51): "It is now uniformly stated by text writers, that where the master, on being notified by the servant of defects that render the service he is engaged to perform more hazardous, expressly promises to make the needed repairs, the servant may continue in the em-

ployment a reasonable time to permit the performance of a promise in that regard without being guilty of negligence, and if any injury results therefrom he may recover, unless when the danger is so imminent that no prudent person would undertake to perform the service.   *   *   * The doctrine on this subject rests on sound principle, and it will be found to be supported by English and American decisions. The reason upon which the rule is said to rest is, that the promise of the master to repair defects relieves the servant from the charge of negligence by continuing in the service after the discovery of the extra perils to which he would be exposed."

In *Counsel* v. *Hall*, 145 Mass. 468, the plaintiff was employed by the defendant to take charge of an engine and boiler, and plaintiff complained to defendant that the glass water-gauge of the boiler was defective and dangerous, and defendant promised to get a new one. About two weeks after, the gauge exploded, injuring the plaintiff. The court said: "If machinery upon which a servant is employed has become dangerous, and the servant has complained of it and has been promised that it shall be repaired, but is injured before the defect is remedied and while he is reasonably expecting the promise to be performed, the promise is a circumstance to be considered by the jury.   *   *   *   If the time for the performance has gone by before the accident, and, as must have been, after the servant knows that the repairs have not been made, there is very strong argument that the servant is no longer relying upon the promise and has decided to take the risk."

In *Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573, the plaintiff was engaged in taking clay from the bank. He had objected to go underneath on account of the dangerous condition of the bank, and said that if it should go down he would be injured. One Keily was foreman in charge, representing the defendant, and he insisted there was no danger and ordered the plaintiff to go underneath

170—14

and perform his work. Under those circumstances the court, in its opinion, held the plaintiff was not on the same footing with the master, and that his primary duty was obedience, and while he believed it dangerous to go under the bank, and protested, yet where the master sought to allay his fears and induce obedience to his commands by declaring there was no danger, the servant, in such case, having such fears and relying upon such assurances, was entitled to recover. That case, however, presents various differences from the case at bar.

While it is true some cases hold the rule to be, that the servant, after having informed the master of any defects in machinery, tools, appliances or surroundings of his work, and the master having promised to repair and make safe such defects, has the right to rely upon such promise and continue in the employ of the master expecting such promise to be fulfilled, yet the rule in this State, and also in most other States, holds that such expectation on the part of the servant may continue only for a time reasonable for such repairs to be made or defects remedied, and if not so made within a reasonable time, the servant, having full knowledge of such defects, will be considered to have waived the same and subject himself to all the dangers incident thereto. (*Swift* v. *Madden*, 165 Ill. 41.) In the case at bar, the plaintiff says he had frequently gone to the foreman and told him that the standing where he was working was dangerous, and that the foreman would make an "offish" reply of some kind and say he would fix it. Plaintiff says he spoke to the foreman quite a number of times during the year prior to this accident, the last time being two or three weeks before the injury occurred. He also says, in substance, that he did not place much reliance upon the foreman's word, but supposed, however, the floor would be fixed.

It is apparent from this record the floor was in a dangerous condition. It is apparent, also, the plaintiff was fully aware of this dangerous condition, and had been so

for at least a year. It was his duty, being fully aware of the danger, to have notified the foreman or his employer, which he did. It was his right, also, under the law, having given such notice, to have continued in the work in which he was engaged for a reasonable time only, awaiting the fulfillment of this promise to remedy such dangerous condition. The jury should have been instructed that the law was as stated in the instruction which was refused. The instruction should have been given, and it was error to refuse it. For this error the judgment is reversed and the cause remanded to the circuit court.

*Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I do not agree to the reversal of the judgment in this case, nor to the reasons given for such reversal. So far as the discussion of certain of the facts is concerned, it would seem to be sufficient to say that the judgment of the Appellate Court has finally and conclusively settled the facts in favor of appellee.

I do not find so much fault with the statement of the general rules governing such cases, as I do with the application of such rules to the instruction which the court below refused to give to the jury at the request of the defendant, and for which refusal this court now reverses the judgment. I am satisfied that the instruction in question was erroneous, and that it was properly refused. That instruction, if given, would have told the jury that the servant may, while relying upon the promise of the master to repair, remain in the service of the master *only for such a time after such promise as would be reasonably sufficient to enable the master to remedy the defect*, and that if he continues in such service longer than that he assumes the increased risk. I do not understand the law to be that the time, and that only, which would be reasonably sufficient for the making of the repairs is the measure of the time during which the servant may rely upon the mas-

ter's promise to repair. I submit, with deference to the opinion of the majority of the court, that the reasonable time does not so much relate to the time required to make the repairs, as it does to the time the servant is authorized, in the exercise of reason and prudence, to rely upon his master's promise. I know that the authorities and text-books state in general terms, as stated in the opinion of the court, that the servant may continue, after the promise to repair, in the employment of the master a reasonable time to enable the master to make the repairs and remove the defect. But it does not follow that the measure of such reasonable time is as stated in said refused instruction. Let it be supposed that a case is on trial and the injury to the servant is undisputed. The master admits the defective condition of the machinery or the place where the servant is required to work, and that it caused the injury; admits the servant notified him of such defective condition, and that he gave the servant his promise to make repairs and remove the defects complained of; that he failed to keep his promise and the servant was injured. Then, under the rule stated in the above mentioned instruction and adopted by the opinion of the court, the master would proceed to prove, to relieve himself from liability, that he did not, within such time as would have been reasonably sufficient for the purpose before the injury, make the promised repairs,—in other words, would make a complete defense by proving his own default and negligence, while the servant would be required to prove the master was not in default, but had not, at the time of the injury, had sufficient time in which to make the repairs. Such positions of the parties would, to say the least that might be said, be anomalous.

It seems clear to me that the rule stated in this instruction and adopted by this court is illogical and contrary to reason and natural justice. It is also in conflict with what was held in *Weber Wagon Co.* v. *Kehl*, 139 Ill. 644. It seems to me that the true rule ought to be, and

is, that the assumption of the increased risk by the master by his promise to repair, whereby the servant is induced to remain, will continue until he fulfills his promise or notifies the servant of his inability or unwillingness to do so, or until such a length of time has elapsed as would, under all of the attending circumstances, make it unreasonable for the servant to longer rely upon the promise. Under such a rule the question would be whether the servant, at the time of the accident, relied, or had reasonable grounds to rely, upon the promise of the master to repair, or had himself assumed the increased risk by continuing in the service after he had ceased to rely upon the master's promise. The rule is stated more broadly than is here contended for in *Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573, citing *Holms* v. *Clark,* 7 H. & N. 348. See, also, *Counsel* v. *Hall,* 145 Mass. 468.

Mr. JUSTICE MAGRUDER: I concur in the views expressed by Mr. Justice CARTER.

Mr. JUSTICE BOGGS: I concur in the dissenting opinion of Mr. Justice CARTER.