## WILLIAM B. McCLUSKY *vs.* GARFIELD AND PROCTOR COAL COMPANY.

Bristol. · October 28, 1901. — November 26, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Negligence*, Employers' liability : Assumption of risk.

In an action by a workman injured in the hold of a coal barge by the swinging back of a steam shovel, it appeared, that after the bucket was lowered the plaintiff and the foreman would take hold of it at opposite corners and push it to the point from which the coal was to be taken, then both run back to escape the bucket as it swung back. When they began the coal was level, but as the work went on a bank of coal formed beyond the place where the shovel was working and the plaintiff testified that the coal continued to get steeper and more shifty and he noticed that it was harder to run back to avoid the bucket as it swung back. Whereupon he said to the foreman " Why not take a few shovelfuls out forward and put it on a level and make more room. There is not sufficient room here." The foreman said " I will, in a minute " and the plaintiff answered " All right." He continued to work and, on the third shovelful after, slipped down on the steep coal and was struck by the bucket and injured. *Held*, that the reply of the foreman " I will, in a minute " was not an assurance that the place was safe, but conveyed the information that before the coal would be levelled its surface would become still more steep by the operation of the shovel, and that the plaintiff's reply " All right " taken with the fact of his continuing to work meant that he continued to take the risk such as it might be; and that as matter of · law judgment must be given for the defendant.

TORT under St. 1887, c. 270, by an employee of the defendant for injuries caused by being struck by the bucket of a steam shovel when swung back to clutch coal to be hoisted out of the hold of a coal barge.   Writ dated July 14, 1899.

At the trial in the Superior Court, before *Bell, J.*, it appeared, that in discharging the coal the bucket was lowered, with its

wings open through the hatchway, and was then swung back, and that one Wood, the defendant's foreman, and the plaintiff, took hold of it at opposite corners and pushed it to the point from which the coal was to be taken.   Upon reaching the coal the bucket closed automatically, and in closing the engine reversed and the bucket was drawn out.   Men called trimmers shovelled the coal from under the combings or edge of the hatchway from which the coal was being discharged out towards the open hatchway, to move the coal in reach of the shovel and to give room and space, and sometimes the foreman would take a few shovelfuls with the steam shovel forward when the men were working aft.   On the morning of the accident the plaintiff came down late to where the barge was being discharged and was hired by Wood to go to work.   At that time the coal had been discharged under this hatchway nearly down to the top of the keelson.   The plaintiff took a shovel and prepared to trim out the coal.   Wood said to the plaintiff, "You better drop that shovel and come and help me push the steam shovel."   At that time the surface of the coal was practically level.   After Wood and the plaintiff had pushed the bucket to the part of the hatchway from where the coal was to be taken they both ran back under the forward combings of the hatchway to escape it as it swung back and had nothing further to do with the bucket except to get out of the way of it.   The plaintiff and other witnesses testified that under the forward combings of the hatchway was the only safe and prudent place to avoid the bucket as it swung back.   It was admitted that Wood was the foreman exercising superintendence, and that he had full control and charge of the trimmers and directed where they should trim out the coal.   He also decided from where the steam shovel should take coal.

The plaintiff testified that the usual custom was to have the trimmers forward in the hatch when coal was being taken out from the after part of the hatchway, trimming the coal out in reach of the bucket and to give room and space; that up to and at the time of the injury there was no trimmer forward; that Wood allowed the coal to pile up forward more than usual; that the gang of trimmers was not as large as usual that morning; that Wood had not taken any coal out forward with the

steam shovel while the plaintiff was there that morning; that as the coal was being discharged a bank of coal began to form forward of the hatchway by reason of the coal being taken out from the hatchway and none taken out from forward; and that the coal continued to get steeper and more shifty and he noticed it was harder to run back; as soon as he noticed it he said to the foreman, "Why not, Mr. Wood, take a few shovelfuls out forward and put it on a level and make more room? There is not sufficient room here." Wood said "I will, in a minute." The plaintiff answered "All right." They took out three shovelfuls after that and on the third shovelful the plaintiff ran back as usual, but the coal under the forward combings of the hatch had become so steep that it slipped out from under him, causing him to slip down, and the bucket as it swung back hit him on the leg and injured him. The plaintiff also testified, that so long as the coal was kept level for a sufficient space back of the backward swing of the bucket there was no difficulty in avoiding the bucket and that he could easily have got out of the way if the coal had been levelled off for a sufficient space back; that he relied fully upon the foreman as to the way the work was done; that he simply did as he was told to do and that was all; that always before when he had helped Wood they had had trimmers forward and room enough; that he did not pretend to know as much as the foreman about it, as the foreman was there constantly and he was there only part of the time; that he thought Wood would take some of the coal out forward after he had had this conversation with him; that he was influenced to continue his work there by reason of what Wood had said. There was also evidence tending to show that the bucket had not swung back so far before on that morning. The plaintiff had never had charge of the bucket, but occasionally had helped Wood with the bucket for the past three or four years, although during that time and for a number of years previous he had worked mostly as a trimmer. He had worked in discharging vessels for the past fifteen years, but never as a foreman. There was evidence tending to show that the bucket at the time of the injury was handled properly. The hatchway was about fourteen to twenty feet square; there were seven or eight men employed when the plaintiff went to work,

It was possible to push the bucket four or five feet under the combings of the hatchway, and at the time of the injury it was pushed aft about that distance.

At the conclusion of the plaintiff's testimony, the defendant's counsel moved that a verdict be ordered for the defendant. The judge refused this motion, but, being in doubt, allowed the case to go to the jury, stating that he would report the case if the verdict should be for the plaintiff. A verdict was returned for the plaintiff in the sum of $1,000 ; and the judge reported the case for the determination of this court. If upon all the evidence the plaintiff was entitled to go to the jury, the verdict was to stand ; otherwise, the entry was to be judgment for the defendant.

*H. M. Knowlton*, (*A. E. Perry* with him,) for the defendant.

*M. R. Hitch*, for the plaintiff.

BARKER, J.   There can be no question that the general risk of such an accident as that by which the plaintiff was hurt was an ordinary risk of his employment, perfectly well known to him in fact and therefore assumed by him. A verdict should have been ordered for the defendant upon this ground unless what occurred between the plaintiff and the foreman just before the accident made it a question for the jury whether the plaintiff continued to work without fully appreciating the risk because of some implied assurance on the part of the foreman that the risk was not so great as to justify the plaintiff in stopping work until the conditions which made it especially dangerous should be changed.

In our opinion such an inference could not have been drawn fairly from the evidence. The plaintiff had had many years' experience in unloading coal from vessels by the means used when the accident occurred. He had helped push the shovel upon a number of previous occasions and knew as well as any one the elements of danger in his work, and that the exact factors contributing to that danger would vary with each occasion when he should help to push forward the shovel and endeavor to avoid being struck by it when it swung back. He had not only noticed that the coal up the inclined surface of which he had to run to avoid the shovel when it swung back continued to get steeper and " more shifty " and that it was harder for him

to run back, but he must have known also that the taking out of each shovelful of coal tended to make the incline more steep and harder for him to run up. He said to the foreman, "Why not . . . take a few shovelfuls out forward and put it on a level and make more room? There is not sufficient room here."

The reply of the foreman "I will, in a minute" was not an assurance that in his opinion the place was safe, or that its condition should be made safer at once, but it plainly implied and should have been sufficient to convey to the plaintiff the information, that before the coal would be levelled in the way suggested, its surface would be made still more steep by the continued operation of the shovel. The natural meaning of the plaintiff's rejoinder "All right" taken with his continuing the work, was that he continued to take the risk such as it might be. In the opinion of a majority of the court the case should have been taken from the jury, and in accordance with the terms of the report there must be

*Judgment for the defendant.*