## Thomas P. Daily *vs.* Fiberloid Company.

Essex.    March 8, 1904. — June 27, 1904.

Present: Knowlton, C. J., Morton, Lathrop, Loring, & Braley, JJ.

*Negligence*, Employer's liability.

In an action by a night watchman and fireman against his employer for injuries from a fall caused by the canting over of a plank runway up which the plaintiff was wheeling ashes in an iron barrow, it appeared, that the plaintiff had been in the defendant's employment as night watchman and fireman for about twelve years, that for about a month before the accident the runway had been warped and twisted and the plaintiff had been accustomed to trig up with a wooden wedge one of the corners of the runway resting on the floor, that when the wedge was in the plank was firm but that it was rickety without it, that three or four days before the accident the plaintiff told the defendant's superintendent that the plank was warped or "rockety" and that it was not fit to wheel on, and the superintendent said that he would see to it.   The plaintiff testified that he supposed the wedge was in when he started up the plank because he "generally looked every barrel."   *Held*, that the plaintiff could not recover, as he fully knew the condition of the runway and assumed the risk, and there was nothing to show that his continuing to work was induced by any statement of the superintendent.

Lathrop, J.   This is an action begun in the Superior Court for personal injuries sustained by the plaintiff while in the defendant's employ, on April 12, 1903.   The declaration contained three counts; the first and second under the R. L. c. 106, § 71, cls. 1, 2, and the third at common law.   At the close of the plaintiff's evidence a verdict was directed for the defendant, and the case is before us on the plaintiff's exceptions.

The plaintiff had been in the employ of the defendant for about twelve years, as a night watchman and fireman.   He worked from six o'clock in the evening until half past six the next morning.   He was required to make his rounds as watchman, and to attend to the fires under three boilers.   The floor of the boiler room was about three feet below the surface of the ground.   The plaintiff was required to remove the ashes from under the boilers to a place in the yard outside the boiler room.   The ashes were wheeled in an iron barrow from the floor of the boiler room up an inclined runway and through a doorway to the yard.   There was a short flight of steps from the floor of the

boiler room to the doorway. The runway was about fifteen feet long, and about thirteen inches wide. It was made of two pieces of plank that were nailed together, and it was bevelled on the edge that rested on the floor of the boiler room. It was made in the carpenter's shop of the defendant, and had been in use about three months at the time of the accident. About a month before the accident this runway had become warped and twisted, so that only one corner of it rested on the floor, and the plaintiff was accustomed to trig up the other corner on the left side of the runway, so that it might have an even bearing on the floor, using for this purpose a piece of joist which was bevelled in the shape of a wedge. When the runway was not in use it stood in a corner of the boiler room, and the wedge was usually placed on a pile of coal. The plaintiff had wheeled out ashes from the place where he was at work for two or three years before the accident. The accident happened about five o'clock on Sunday morning, and during the night before the plaintiff had wheeled out over the runway eight or nine loads of ashes. When he was wheeling another load, and when about half way up the incline, the runway canted to the left, and he was thrown to the floor and injured.

The plaintiff testified that, with the trig in, the plank was firm, and with it out the plank was rickety; that he knew it was necessary to have the trig in. And yet, when asked whether the trig was in when he started up the plank, his answer was, "I suppose it was, because I generally looked every barrel." And he puts it no higher than that. We are of opinion that as the plaintiff was a man of experience, and knew fully the condition of the runway, he assumed any existing risk. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135. *Carrigan* v. *Washburn & Moen Manuf. Co.* 170 Mass. 79.

The plaintiff relies upon a conversation with the defendant's superintendent, to show that he did not assume the risk. The accident, as we have already stated, took place early on Sunday morning, and the plaintiff testified that, on the Wednesday or Thursday before, he told the superintendent that the plank was warped or " rockety "; that it was not fit to wheel on; and that the superintendent said he would see to it. There was no evidence in the case that the plaintiff continued at work in reliance

upon any statement made by the superintendent, and unless this is shown the rule stated in *Counsell* v. *Hall*, 145 Mass. 468, does not apply. *Lewis* v. *New York & New England Railroad*, 153 Mass. 73. *Westcott* v. *New York & New England Railroad*, 153 Mass. 460. *Levesque* v. *Janson*, 165 Mass. 16. *Silvia* v. *Wampanoag Mills*, 177 Mass. 194. *McClusky* v. *Garfield & Proctor Coal Co.* 180 Mass. 115. See also *District of Columbia* v. *McElligott*, 117 U. S. 621 ; *Marsh* v. *Chickering*, 101 N. Y. 396 ; *Illinois Steel Co.* v. *Mann*, 170 Ill. 200.

On the whole case we are of opinion that the order must be

*Exceptions overruled.*

*J. P. Sweeney*, (*R. E. Burke* with him,) for the plaintiff.
*W. I. Badger & W. H. Hitchcock*, for the defendant.