The Town of Scott vs. The Town of Clayton.

The Town of Scott vs. The Town of Clayton.

*January 12 — February 8, 1881.*

PAUPER. *(1) Acquiring and losing settlement. (2, 3) Notice from one town to another as to pauper.*

1. Subd. 7, sec. 2, ch. 34, R. S. 1858 ("Of the relief and support of the poor"), provided that every settlement, once legally acquired, should continue until lost or defeated by acquiring a new one in this state, "or by voluntary and uninterrupted absence" from the town in which such settlement had been gained, "for one whole year or upward," and that, upon the acquisition of a new settlement, or "the happening of such voluntary and uninterrupted absence," all former settlements should be lost. Sec. 3 provided that no residence of any person in any town while supported therein as a pauper should give such person a settlement in such town. Sec. 26 required the supervisors of the town in which the pauper had a legal settlement to remove him to such town whenever they had notice that he needed support in the town where he resided. *Held*, that "the voluntary and uninterrupted absence" spoken of in said subd. 7, did not include an absence during which the town in which the person had a legal settlement supported the absentee as a pauper in some other town in the state.

2. In this state, the notice given by the town in which a pauper resides to that in which he has a legal settlement, does not conclude the latter as to any material fact; and a more liberal rule as to the sufficiency of such a

notice will be followed than in Maine and Massachusetts; but whether a notice which does not show that the town giving it has furnished any support to the alleged pauper, is sufficient, it was not necessary to determine here.

3. Where one sufficient notice has been given in such a case, or the defects of that actually given have been waived (by the notified town acting upon it as if sufficient), no further notice is required so long as the poor person retains his settlement in the same town.

APPEAL from the Circuit Court for *Crawford* County.

Plaintiff appealed from a compulsory judgment of nonsuit. The case is thus stated by Mr. Justice TAYLOR:

" This action was brought to recover ·money alleged to have been expended by the town of Scott for the support of certain indigent persons residing in that town, who had no settlement therein, but had a settlement in the town of Clayton. The poor persons for whom the support was furnished, were a mother and her two children. There is no dispute in the evidence that in January, 1875, these persons had a settlement in the town of Clayton. In January, 1875, they left that town, and removed to the town of Scott, and have resided in said town ever since. The evidence further shows that in the fall of the year 1875, and within one year after they removed from the town of Clayton, these persons required support as paupers; and that on the 17th of August, 1875, the supervisors of the town of Scott served a notice upon the supervisors of the town of Clayton, of which the following is a copy:

'STATE OF WISCONSIN, COUNTY OF CRAWFORD — *ss.:*

' *To the Supervisors of the Town of Clayton, in said County:*

'You are hereby notified that Madam Sarah Ann Enyart, a pauper, having made application ·to us for relief for herself and two children, who have gained a settlement in your town, to which they belong, is in the town of Scott, in said county, and will have to be supported at the expense of the said town of Scott, for which the undersigned are supervisors. You are

The Town of Scott vs. The Town of Clayton.

therefore required forthwith to take charge of and provide for said paupers.

'Given under our hands, at the town of Scott, Crawford county, Wis., this 17th day of August, A. D. 1875.

'SQUIRE TONEY, CHAIRMAN,

'ISAIAH BROWN,

Supervisors.'

" Shortly after the service of this notice, the supervisors of the town of Clayton made provision with the father of Mrs. Enyart for the support of said poor persons, and paid him for their board two dollars per week, and also furnished them clothing, and continued to pay for their board and furnish clothing until about the 8th of October, 1877. The evidence also shows that the supervisors of Clayton, shortly after the service of such notice, paid the town clerk of the town of Scott five dollars for his expenses in serving such notice. It further shows that about October 8, 1877, the supervisors of Clayton requested the mother to remove to the town of Clayton with her children and receive support in that town. She refused to remove, and such supervisors then notified her that they would not furnish her any further support unless she consented to remove. They then furnished her clothing for herself and children, of the value of $40 or $45, and notified her that they should furnish nothing thereafter. She and her children continued to remain in the town of Scott, and in the summer of 1878 she fell sick and required medical attendance, and through her father she applied to the supervisors of the town of Scott to furnish her such medical attendance, and it was furnished by the supervisors of the town of Scott. The evidence also shows that, either in the winter of 1878 or 1879, the said supervisors furnished her children with some shoes and clothing, upon her application, and that they served a second notice on the supervisors of the town of Clayton, on the 20th of September, 1878, of which the following is a copy:

The Town of Scott vs. The Town of Clayton.

'STATE OF WISCONSIN, COUNTY OF CRAWFORD — *ss.:*
'*To the Supervisors of the Town of Clayton, in the said County of Crawford:*
'You are hereby notified that Sarah Enyart and her three children, paupers who have gained a settlement in your town, to which they belong, are in the town of Scott, for which the undersigned are supervisors. You are therefore notified and required forthwith to take charge of and provide for said paupers.
'Given under our hands, at the town hall in the town of Scott, this 20th day of September, A. D. 1878.

'G. W. CHURCHILL,
'DAVID QUICK,
'WM. WINDHAM,
                    Supervisors.'

"No attention was paid to this notice by the supervisors of the town of Clayton; and this action was brought to recover the bill for medical attendance, for the shoes and clothing, and for the expenses of giving the notice. Upon the trial, the court ordered that the plaintiff be nonsuited, and judgment was rendered in favor of the defendant for costs; from which judgment the plaintiff appealed."

For the appellant there was a brief by *Brooks & Dutcher*, and oral argument by *Mr. Dutcher* and *M. M. Webster.*

For the respondent there was a brief by *Thomas & Fuller* and *W. H. Evans*, and oral argument by *Mr. Thomas* and *Mr. Evans.*

TAYLOR, J. The record does not disclose upon what ground the learned circuit judge ordered the nonsuit; but in this court it is insisted by the learned counsel for the respondent that the nonsuit was properly ordered upon three grounds: *first*, upon the ground that the evidence does not show that the persons relieved by the appellant town were paupers and

entitled to assistance as such; *second*, that the evidence does not show that they had a legal settlement in the defendant town when such assistance was furnished by the plaintiff; and *third*, that the plaintiff never gave the town a sufficient notice under section 25, ch. 34, R. S. 1858 (Tay. Stats., 721, § 27).

The first point is not urged in this court, and we are clearly of the opinion that upon the evidence it was a question of fact for the jury to determine, and not of law for the court. There was evidence tending to show that Mrs. Enyart and her children were paupers, and entitled to assistance as such, when the medical attendance was furnished to her by the plaintiff, and also when the shoes and clothing were furnished. Upon that question the case should have been submitted to the jury. It is urged that the evidence does not show that Mrs. Enyart and her children had a legal settlement in the defendant town in the year 1878, when the medical attendance was furnished, nor at the time the shoes and clothing were furnished. It is admitted that Mrs. Enyart and her children had a legal settlement in the defendant town in January, 1875, when she left that town and moved into the plaintiff town; and the evidence shows that she was supported as a pauper in the plaintiff town by the defendant from December 24, 1875, to October, 1877. There is also some evidence tending to show that she received some aid from the defendant town previous to December 24, 1875, and after she lived in the town of Scott. The evidence also shows that on October 8, 1877, the town of Clayton furnished her and her children with $40 or $45 worth of clothing for present and future use. It also tends strongly to show that in the winter of 1878 her children were destitute of shoes and clothing; that she had no means to provide for them, and that the town of Scott furnished some shoes and clothing for the children at that time, and in the summer of the same year (1878) it furnished medical attendance, which she absolutely needed.

It is argued that under the provisions of subdivision 7 of

sec. 2, ch. 34, R. S. 1858, Mrs. Enyart and her children lost their settlement in the town of Clayton previous to the summer of 1878. This subdivision reads as follows: "Every settlement, when once legally acquired, shall continue until it shall be lost or defeated by acquiring a new one in this state, *or by voluntary and uninterrupted absence from the town in which such legal settlement shall have been gained, for one whole year or upwards;* and upon acquiring a new settlement, *or upon the happening of such voluntary and uninterrupted absence,* all former settlements shall be defeated and lost." Section 3 of the same chapter is material to the discussion of the question involved in this case, and reads as follows: "But no residence of any person in any town, while supported therein as a pauper, shall operate to give such person a settlement in such town." It is claimed by the learned counsel for the respondent, that the evidence conclusively shows that Mrs. Enyart was voluntarily and uninterruptedly absent from the town of Clayton for more than one year previous to 1878, and that therefore she had lost her settlement in said town under the provisions of said subdivision 7 of section 2, above quoted; and that it is entirely immaterial that she had not in the mean time gained a legal settlement in said town of Scott, or any other town in the state; that, having lost her settlement in the town of Clayton, and not having gained any other in the state, she must therefore be supported at the expense of the county.

We are inclined to think the conclusion drawn by the learned counsel would be correct if the absence of Mrs. Enyart from the town of Clayton had been such a voluntary and uninterrupted one as is contemplated by the statute above referred to. The provision is a novel one, and, so far as we have been able to ascertain, is not found in the laws of any other state. Most of the laws of other states provide that when a person has acquired a legal settlement for the purpose of support as a pauper, such settlement continues until he acquires another

within the state. Under the law above quoted, it is clear that a person may lose his or her settlement in any particular town within this state, and yet not have gained one in any other. If a person, not being a pauper, should remove from the town in which he has a legal settlement, and go to some other state and remain there a year, and then return to this state and make his home in some other town than the one he removed from, and then become a pauper, not having resided there one year, he would have lost his settlement in his old home and not have gained one in the new; and in such case the county would be chargeable with his support. So, if, under like circumstances, he should remove from the town in which he had a legal settlement and reside in another town for six months, and then make a second removal and reside in another for six months or more, and thereafter become a pauper, needing support, before residing in the latter town one year, his settlement in the town from which he first removed would be lost, and still he would have acquired no other settlement within the state; and in this case also he would be a county charge.

We think the voluntary and uninterrupted absence spoken of in said section must be construed to mean an absence, especially if the party resides within this state, during which the party is not a pauper needing and receiving support, and that it does not mean an absence during which the town in which he has a legal settlement supports the absentee as a pauper in some other town in this state. Any other construction of this provision would lead to practices which could not be tolerated, and which we think were clearly not within the intention of the legislature. If a voluntary absence of the pauper for one year from the town in which he had a legal settlement destroyed that settlement and relieved such town from his further support, although the town in which he had his settlement supported the pauper in some other town during the year, then it would be a very easy matter for every town in the county to cast the support of its paupers upon the county, and

a county system for the support of paupers would be inaugurated without resorting to the methods prescribed by the statute on that subject. The paupers so supported out of the towns to which they were chargeable would gain no settlement in the town where supported, under the provisions of section 3 above quoted; and if, according to the argument of the learned counsel for the respondent, they lost their settlement in the town supporting them, after the year's support in another town, they would thereafter become a county charge. Taking the whole statute together, and especially in consideration of the provisions of section 26, ch. 34, R. S. 1858 (section 1514, R. S. 1878), which requires the supervisors of the town in which any poor person has a legal settlement to remove such poor person to their own town whenever he needs support in the town where he may reside, and the town in which he has a legal settlement has notice thereof as provided in section 25, ch. 34, R. S. 1858 (section 1513, R. S. 1878), we think it very clear that when such contingency happens within one year after such poor person has voluntarily removed from the town in which he has a settlement, such voluntary absence then becomes interrupted by the duty which the statute imposes upon the town in which the person has a settlement to remove such person forthwith to such town, and that such town cannot acquire any right, or destroy the settlement of such person in such town, or cast any burden upon the county in regard to the support of such person, by neglecting to perform its duty in removing such poor person to its own town. After such necessity for support occurs, and the notice is given, the voluntary absence of such poor person from the town in which he has a settlement is interrupted within the meaning of the statute. The fact that such poor person does not desire to return to his place of settlement, or refuses so to do, can make no difference as to the legal *status* of the party. The right of the town in which the poor person has a settlement to remove such poor person to such town seems to be clearly implied by the

language of the statute, and the duty to remove is clearly expressed; and if such town neglects for any reason to make such removal, and supports such poor person in the town in which he may then be, still, in law, for the purpose of determining the rights of the town under the provision above quoted, such poor person must be deemed to have removed to such town, and thereby the voluntary absence is terminated.

The learned counsel for the respondent insists that the evidence shows that Mrs. Enyart and her children were voluntarily absent from the town of Clayton for more than one year, and that during such year they were not receiving support as paupers, either from the town of Clayton or the town of Scott. If we have given a true construction to the statute above quoted, then it is clear that such absence was not uninterrupted for the term of one whole year. She and her family had not resided in the town of Scott one whole year before she needed and received support as a poor person, nor had she resided that length of time in the said town of Scott after the defendant town refused further support in 1877. That the time she resided in Scott in 1875, without support, cannot be tacked to the time she resided in said town in 1878, without support, in order to make up the year, is evident from the language of the statute. The residence out of the town in which the settlement is, must be uninterrupted for one year. In our view of the meaning of the statute, such residence was interrupted in the fall of 1875, and before a year from the date of her removal had expired; and, in order to relieve the defendant town under this statute, she must have remained voluntarily and uninterruptedly absent for one year or more after it ceased to provide support for her in 1877, and during that year not have received support as a poor person either from the town in which she resided or from the town of Scott. The evidence at least tended to show that she needed support within the year, and received such support from the plaintiff town. If she did need support, and such support was provided by the town of Scott,

within a year from October 8, 1877, then her absence was again interrupted, and the defendant town is not relieved from her support.

It is urged as a reason why the plaintiff ought not to recover in this case, that the notices given by the plaintiff to the defendant town were not sufficient under the statute. The point made is, that the notices do not state that the plaintiff town had, before the notices were given, furnished any support to the poor persons named therein, and that the proof does not show that any such support had been furnished by the town of Scott before such notices were given. It is a sufficient answer to this objection to say that the defendant town waived any right to except to the sufficiency of the first notice, given in 1875. The evidence shows that it acted upon the notice, and took upon itself the support of said poor persons, shortly after the notice was given, and paid the clerk of the town of Scott his expenses in serving such notice. The defendant town, having waived the insufficiency of the notice (if it was insufficient), cannot now take advantage of such defect. It is, however, urged that the second notice, in 1878, was also insufficient, and as to that there has been no waiver on the part of the defendant. We are inclined to hold that no second notice was required under the statute, in 1878, and it is therefore immaterial whether the notice then given was sufficient or not. When a sufficient notice has been once given, the statute makes the town in which the poor person has a settlement liable to the town in which he resides for all the expenses of maintaining such poor person, so long as he shall remain a public charge, " and the supervisors of the town where such poor person may be, may from time to time sue for and recover the same, with costs." Under this statute it is clear that if a notice has once been given which is sufficient, or which the defendant town has accepted as sufficient, the town giving the notice is not under obligation to give another notice thereafter, each time it furnishes support to such poor person, in order to maintain an

The Town of Scott vs. The Town of Clayton.

action against the town in which such person has a settlement. The one notice is sufficient. The town in which the poor persons have a settlement by such notice understands that the town in which they reside intends to hold it liable for any support which such poor persons may reasonably need whilst they reside in such town; and if the town in which they have a legal settlement neglects to remove them within its own borders and support them there, it is charged with notice that it will be called upon to pay for such support as may be properly furnished by the town in which they reside. After a notice has been once given, under the statute, to the town in which the poor persons have a legal settlement, such town becomes liable to the town in which they reside for any support theretofore or thereafter furnished them, so long as they remain in the town giving the notice, and so long as the legal settlement of such poor persons remains in the town to which such notice is given.

Whether the notices served were sufficient in fact under the statute, need not be decided in this case. We deem it proper, however, to remark that the authorities cited from Maine and Massachusetts cannot have much bearing upon the construction which should be given to our statute. In those states the towns which receive the notice are concluded by the same, upon the question of settlement, unless they make answer to such notice within a certain fixed time; and in addition to this the statutes in those states require that the notice shall state the facts relating to the person becoming chargeable to the town giving the notice. See Revised Statutes of Maine, 1871, ch. 24, §§ 27, 28; Revised Statutes of Massachusetts, 1860, ch. 71, §§ 17, 18. In this state, the notice does not conclude the defendant town in any material matter, and only seems necessary for the purpose of giving the town in which the poor person has a settlement notice of the fact that such person is a resident of some other town in which he needs support, so that the former town may provide for such support and relieve itself from any

liability to the town in which he may then reside. And, doubtless, a more liberal construction should be given to the statute, as to the substance of the notice to be given, than is given by the courts of the states of Massachusetts and Maine under their laws. See *La Crosse v. Melrose*, 22 Wis., 459; *Town of Pine Valley v. Town of Unity*, 40 Wis., 682. In the last case the allegation of notice in the complaint was of a notice similar in all respects to the first notice given in this case, and the court held the complaint sufficient. But, as we hold that the defendant town waived any right to except to the sufficiency of the first notice given, and that no second notice was necessary to fix the liability of the defendant town, we forbear further comment upon this point.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.   . ·