THE TOWN OF ETTRICK, Respondent, vs. THE TOWN OF
BANGOR, Appellant.

*January 14 — January 31, 1893.*

*Poor laws: Who is a "poor person"? Legal settlement: Action for*
*maintenance.*

1. One who owns a farm worth $800, with an incumbrance of only $70,
   besides live stock and other personal property, is not a "poor per-
   son," within the meaning of sec. 1499, R. S.
2. Where a poor person having a legal settlement in one town moves
   to another and afterwards acquires property, he does not acquire a
   new settlement if, though no longer a pauper in fact, he is sup-
   ported as such during his entire residence in the latter town.
3. A child of such person, who was a minor at the time of his said re-
   moval and who, after becoming of age, was supported as a pauper
   in the home of his father with occasional absences, also retains his
   former legal settlement unless by a year's continuous self-supporting
   absence from home he acquired a new and independent settlement.
4. If the town to which such person removed advanced money for the
   support of himself and a weak minded adult child who still retains
   his former legal settlement, and if the father, though not himself
   a pauper, was not able to support such child, such town is entitled
   to recover from the town of their legal settlement such part of said
   advances as was actually used for the support of the child.
5. The father is the proper person to be intrusted with money for
   the support of an adult child who is so weak minded that he can-
   not understand the uses of money.
6. The fact that a town in which a poor person had a legal settlement
   contributed to his support while living in another town, did not
   estop it from claiming that he had ceased to be a pauper, after no-
   tice to the town in which he lived that it would discontinue such
   support.

The Town of Ettrick vs. The Town of Bangor.

7. In an action by one town against another to recover for mainte-
nance by plaintiff of a pauper having a legal settlement in defend-
ant, the service by the latter of a denial of liability under sec. 1514,
R. S., is not necessary to entitle it to defend.

8. Such an action may be commenced without first filing an itemized
account or claim with the defendant town under sec. 824, R. S. The
special provisions of sec. 1514 are inconsistent with the general pro-
visions of sec. 824, and consequently controlling.

APPEAL from the Circuit Court for *La Crosse* County.

Action by respondent town to recover moneys paid for
the support of one Bore Larson and his children, alleged
to be paupers having a legal settlement in the appel-
lant town. The facts were not materially in dispute. It
appeared on the trial that Bore Larson lived and had a
legal settlement in the town of *Bangor* in May, 1880, at
which time he removed with his family to the town of
*Ettrick*. His family consisted of a wife and several chil-
dren, among whom were John, Louisa, and Emma Larson,
who were then minors. These three children appear to
have been weak minded. Soon after this change of resi-
dence, Larson applied to the town authorities of *Ettrick* for
assistance. The case was investigated by one of the super-
visors of *Ettrick* and one of the supervisors of *Bangor*, and,
as a result of that investigation, it appears that the town
of *Ettrick*, for a number of years, paid out considerable
sums to Larson for support, which sums the town of *Ban-
gor* repaid to the town of *Ettrick*. In 1886, an arrange-
ment was made by which *Bangor* agreed to pay *Ettrick*
$150 a year for the support of Larson, and thereafter and
until July 1, 1889, the sum so agreed was paid in semi-
annual instalments. July 20, 1889, *Bangor* notified *Ettrick*
that it would furnish no more support for Larson. In the
mean time Larson's circumstances had improved. He en-
tered eighty acres of land in *Ettrick* under the homestead
law, in 1881, and received a patent therefor in 1888. Upon
this eighty acres he lived. In 1887 he bought an adjoining

eighty acres, for which he paid $225, of which $70 is still owing. In 1890, about thirty acres of this land was under cultivation. According to his own testimony, Larson raised thereon, in 1890, over 300 bushels of wheat, oats and rye, sixty or seventy bushels of potatoes, twenty bushels of corn, and cut fourteen or fifteen tons of hay. His crop in 1889 was about the same as in 1890. He had ten or eleven cattle, raised three hogs and sold two, and kept twenty or thirty chickens. There was testimony tending to show that the 160 acres of land aforesaid were worth $800. In July, 1889, when the defendant town refused to pay any further sums for Larson's support, the three children before mentioned had become of age, but were still to some extent weak minded, but the extent of their mental weakness does not clearly appear. They were able to do some work, if properly superintended. The two girls have worked out some at intervals, but their earnings have not been large, and it does not appear how long they were continuously absent from home at any one time. Since July 1, 1889, Emma and John have been at home all the time, while Louisa worked out about a year for fifty cents a week.

In August, 1889, Larson applied to the authorities of *Ettrick* for help, and the town furnished him $150 for support up to July 1, 1890, at which time it gave the following notice to the defendant town:

" *To the Supervisors of the Town of Bangor, La Crosse County, Wis.:* You are hereby notified that Bore Larson, John Larson, Louisa Larson, and Emma Larson, poor persons who have a legal settlement in said town of *Bangor*, have become charges for their support to the town of *Ettrick*, in Trempealeau county, in which they have no legal settlement, and the said town of *Ettrick* has expended for their support up to this date the sum of $150. You are hereby required by the supervisors of said town of *Ettrick* to forthwith take charge of said Bore Larson, John

Larson, Louisa Larson, and Emma Larson, and pay such charges as have been incurred.

"Dated this 1st day of July, 1890."

Thereafter *Ettrick* furnished $62.91 to Larson, and on the 17th of January filed a claim for $212.90 with the town clerk of *Bangor*. No action was taken on the account by the town of *Bangor*, and this action was commenced April 18, 1891, to recover the moneys so advanced for the support of Larson and his children. The circuit judge directed a verdict for the plaintiff for the full amount claimed, and from judgment thereon defendant appealed.

For the appellant there was a brief by *Losey & Woodward*, and oral argument by *G. M. Woodward*.

*E. C. Higbee*, for the respondent.

Winslow, J. Under the authority of *Rhine v. Sheboygan*, 82 Wis. 352, Bore Larson was not, under the evidence, a "poor person," within the meaning of sec. 1499, R. S., in 1889 and 1890, when he received from the town of *Ettrick* the sums to recover which this action was brought. This being the case, the plaintiff town should not have recovered for any part of such sums which Larson used for his own support or for his own individual purposes. But there was testimony tending to show that a part, at least, of these moneys was furnished and actually used for the purchase of the necessaries of life for some or all of the adult, weak-minded children, Louisa, Emma, and John. The question arises, Can the plaintiff town recover for that part of the moneys advanced which was actually used for the support of these children? In considering this question it becomes necessary to inquire where the legal settlement of these children was at the time in question. Did it remain in *Bangor*, or had it been transferred to *Ettrick?*

Although we have decided that the evidence shows that

Bore Larson, the father, had ceased to be a pauper in July, 1889, still it must be held that he retained his settlement in *Bangor*, because he was during his entire residence in *Ettrick* supported therein as a pauper, and consequently, under the terms of the statute (subd. 4, sec. 1500, R. S.), gained no new settlement. His adult children were minors when he left *Bangor*, and there is testimony tending to show that after they became of age they were supported as paupers at the home of their father, with occasional absences. Under this state of facts, they also retained their legal settlement in *Bangor*, unless it should appear that any one of them, after becoming of age, and being of sufficient mental strength to be recognized as an accountable member of society, had by a year's continuous self-supporting absence from home acquired a new and independent settlement. Upon this point the testimony is very meager; upon another trial it should be made more definite. It is claimed that the evidence does not show that these adult children were " poor persons," under sec. 1499, R. S. The inferences of poverty and destitution resulting from the evidence are certainly very strong, and we should not disturb the judgment on this ground. But as the evidence does not show how much of the moneys advanced was used by Bore Larson for his own purposes, and how much was used for the support of the children, we cannot separate the two amounts and direct a judgment, and hence there must be a new trial. If it shall appear upon such trial that any or either of the weak-minded, adult children were paupers with legal settlements in *Bangor* in 1889 and 1890, under the rules above indicated, and that Bore Larson was not of sufficient ability to support them, the plaintiff town would be entitled to recover such part of the advances as were actually expended for the support of such children.

The fact that the town of *Ettrick* paid the money to Bore Larson alone will not defeat a recovery for so much as actually went to support the children. The evidence tends to show that a part, if not all, of the children were not competent to handle money. The father is undoubtedly the proper person to be intrusted with money for the support of an adult child who is so mentally weak that he cannot understand the uses of money.

We do not regard the fact that the town of *Bangor* contributed to the support of the family up to July, 1889, as in any way affecting its rights in this action, after it gave notice to the town of *Ettrick* that it would discontinue such support; nor do we consider the service of a denial of liability, under sec. 1514, R. S.,[1] as necessary to entitle it to defend the claim of plaintiff. *Scott v. Clayton*, 51 Wis. 185, 195. It was not necessary that an itemized account or claim be filed with the defendant town, under sec. 824, R. S.,[2] before the action can be maintained. We regard the special provisions of sec. 1514, R. S., which regulates

[1] Sec. 1514, R. S., provides that the supervisors of a town in which a "poor person" has a settlement shall, after notice, remove such poor person to their own town, and pay the expenses incurred in maintaining him from the time of his becoming a charge to the town in which he is maintained; and if the supervisors do not remove him, their town shall be liable for the expenses of maintaining such poor person, so long as he shall remain a public charge, and the town where such person may be may, from time to time, recover the same with costs; "but if the supervisors receiving such notice shall, within said thirty days, deny in writing the allegations contained therein, and serve such denial on one or more of the supervisors giving the same, an action for such . . . maintenance shall be commenced within three months after the service of such denial, or be forever barred."

[2] "Sec. 824. No action upon any claim or cause of action, for which a money judgment only is demandable, shall be maintained against any town, unless a statement of such claim shall have been filed with the town clerk, to be laid before the town board of audit, nor until ten days after the next annual town meeting thereafter."

Davis & Rankin Building & Mfg. Co. vs. Riverside Butter & Cheese Co.

this entire subject, as inconsistent with the general provis-ions of sec. 824, and consequently controlling.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.