SHEBOYGAN COUNTY, Respondent, vs. TOWN OF SHEBOYGAN
FALLS, Appellant.

*November 8—December 4, 1906.*

*Paupers: "Supported as a pauper;" Questions for jury.*

1. Although one who is capable of earning a living and has some
   money may not be a pauper in fact, such facts are not conclu-
   sive against the possibility of having been supported as a pauper.
2. Under the expression "supported as a pauper," it is not only es-
   sential that aid should have been given by the poor authorities,
   but that such aid should have been applied to or received by the
   supposed pauper.
3. After a town had furnished support for B., a transient pauper,
   and had been reimbursed by the county, in an action by the
   county against the town in which B. had her legal residence the
   only question submitted to the jury was whether the town offi-
   cers paid the money with the intention of aiding or supporting
   B. as a poor person. *Held*, that such question exhausted the is-
   sues only in case the evidence was undisputed that B. did re-
   ceive the aid or some part thereof.
4. One, though living in the family and eating at the table of a
   pauper aided by the poor authorities, who pays his board, can-
   not be said to receive aid as a pauper merely because the land-
   lord uses the money furnished by the poor authorities to pur-
   chase the food which the boarder eats.
5. In such case it makes no difference that the board is paid in serv-
   ices instead of money.
6. As a means of extending aid and support the poor authorities paid
   certain moneys to L. under an agreement that C. should take
   charge of the housework and care of L.'s children, thereby per-
   mitting L. to work out and earn the balance of the support
   needed for her family, which was done, and, in addition, C. paid
   certain moneys to L. for the purchase of necessaries for L.'s
   family. *Held*, that it could not be said, as a matter of law, that
   C. received as a pauper, and not merely as return for her own
   services and money, any portion of the aid furnished by the
   poor authorities, but that the question should have been sub-
   mitted to the jury for their answer in the light of all the facts,
   circumstances, and reasonable inferences to be drawn therefrom.

APPEAL from a judgment of the circuit court for Sheboy-
gan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action for support furnished by the city of Plymouth be-

tween December 8, 1900, and November, 1903, to one Christina Bade, a pauper, claimed to have legal settlement in the defendant town. Prior to 1898 Christina Bade had made her home with her married son for a number of years in *Sheboygan Falls,* receiving no aid from the public, but being self-supporting and interested in some property in hands of her son, and undoubtedly had her legal settlement in that town. The son died in February, 1898, leaving a widow, Louisa Bade, and eight children. Christina had a small fund of money, something over $100, and worked out to some extent as a nurse. Before July 1, 1898, the family, including Christina, moved to the town of Plymouth, where they remained until about October, 1899, when they moved to the city of Plymouth. In November and December, 1898, the daughter-in-law applied for aid and received one instalment of firewood from the town of Plymouth and an allowance of money, first $6, and then $8, per month, from the town of *Sheboygan Falls.* The amount of that allowance was fixed after consultation with Louisa, upon the understanding that, if Christina would take charge of the housework and care of the children, she, Louisa, would be able to work out and earn the balance of the support needed by her family. This course was followed, Christina Bade performing such work and contributing from her own money toward the purchase of necessary supplies for the family, she, of course, living in the same house and eating at the same table. This allowance of support to Louisa Bade continued even after the removal to the city of Plymouth, but in December, 1900, Christina became sick and disabled and herself applied to the city for aid, which, being furnished her and the bill presented to the county and paid, constitutes the basis of the present suit, on the theory of persisting legal settlement in defendant town. The only material question submitted to the jury was whether, in the sums which the town of *Sheboygan Falls* paid to Louisa Bade within each of the years from July 1, 1898, to Decem-

ber 11, 1900, was included any sum paid by the town with the intention or for the purpose on the part of its supervisors of therewith or thereby aiding or supporting Christina Bade as a poor person. The jury answered affirmatively as to each of the three annual periods. Motion was made to reverse the answers to this question, and for judgment, and also for a new trial, which being denied, judgment was entered in favor of the plaintiff for the amount claimed, from which the defendant appeals.

*Francis Williams,* for the appellant.

*Edward Voigt,* district attorney, for the respondent.

DODGE, J. We have been unable to avoid the conclusion that the questions presented in this case have not been fully tried or decided. Christina Bade's legal settlement in *Sheboygan Falls* had undoubtedly been extinguished by her two years of residence outside of that town, unless, during each year thereof, she had been, in some degree at least, supported as a pauper. *Scott v. Clayton,* 51 Wis. 185, 8 N. W. 171. Mrs. Bade was, confessedly, not a pauper in fact, being capable of earning her own living, and having, at least during the first year, some money; but this fact is not conclusive against the possibility of her being supported as a pauper. *Ettrick v. Bangor,* 84 Wis. 256, 54 N. W. 401. The conceptions involved, however, in the expression "supported as a pauper" are twofold. It is not only essential that aid should have been given by the town, but that such aid should have been applied to or received by the supposed pauper. Instance a case where a town may intrust to a third person supplies intended for the supposed pauper, which, however, are diverted and were neither needed, nor in any wise received, by the latter.

The only question submitted to the jury upon the trial of this case was whether the town officers paid the money with the intention of aiding or supporting Christina Bade as a

poor person. This could exhaust the issues only in case the evidence was undisputed that she did receive the aid or some part thereof. True, there is no dispute but that she took her meals at the table of the family of Louisa Bade and, doubtless, consumed food paid for in whole or in part with the moneys furnished the latter by the town. But this is not conclusive. One, though living in the family and eating at the table of a pauper aided by the town, who pays his board, certainly cannot be said to receive aid as a pauper merely because his landlady may have used moneys furnished her by the town to purchase the food which she sells him and he eats; nor can it make any difference that such board be paid for in services instead of money, especially if the services are such as to enable some other member of the family to devote his time or labor to earning money for its support, thus rendering sufficient a less contribution from the public.

We find in the record considerable evidence from which the jury might have found that Christina Bade occupied such a position and did earn the board and lodging she received. It appears that, though sixty-seven years of age, she was active, physically capable to, and did at times, earn money by working for others, notably as a nurse. It appears, too, that at the time of consultation between Louisa Bade and the supervisors as to the amount necessary for herself and family of eight children that amount was fixed with reference to her own capacity by working for others to earn a share of their maintenance; but that her ability to do this was dependent upon her being relieved from the care of the household and of the children by Christina's devoting herself thereto and foregoing other employment. It is at least inferential from the evidence that this plan was generally followed. Besides this, it is in evidence that Christina paid money to her daughter-in-law, Louisa, for the purchase of necessaries for the latter's family. It is at least a reasonable inference that the home which Christina enjoyed in this struggling, not to say destitute, family was not such as to command much price.

The question, therefore, was presented whether it could fairly be said that Christina received as a pauper, and not merely as return for her own services and money, any portion of the aid furnished by the defendant town. We are clear that such question, which was one of fact, cannot be answered in the affirmative as a matter of law, but that it should have been submitted to the jury for their answer in the light of all the facts, circumstances, and reasonable inferences to be drawn therefrom. This court has decided that there may well arise the question of fact to be decided whether some member of a family whose head receives aid from a town does himself receive any part of it. · *Ettrick v. Bangor,* 84 Wis. 256, 54 N. W. 401. In absence of finding on this question the verdict fails to support the judgment.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.