CITY OF TWO RIVERS, Respondent, vs. TOWN OF WABENO, Appellant: MANITOWOC COUNTY, Defendant.

*March 5—March 31, 1936.*

*Edward W. Schenk* of Wabeno, for the appellant.

*F. W. Dicke* of Two Rivers, for the respondent.

*John R. Cashman,* district attorney of Manitowoc county, for the defendant Manitowoc county.

NELSON, J. Two questions require determination: (1) Did the decision of the county judge upon the petition filed with him by Manitowoc county, for the purpose of obtaining an order directing Brieske and his family to remove to the town of Wabeno, render the issues here *res adjudicata?* (2) Does the evidence sustain the finding of the jury that on June 24, 1930, Brieske was a poor person within the meaning of the statute?

The facts are not in dispute. Prior to June 14, 1929, Brieske was a resident of the town of Wabeno and had a legal settlement therein. Late in the winter of 1929 Brieske suffered a hernia while at work. On May 15, 1929, he reported to the Veterans' Hospital at Milwaukee, where he underwent an operation. On July 10, 1929, he returned to Wabeno, and on the same day appeared at a hearing of the industrial commission at Rhinelander. Upon stipulation of

the parties interested, an award of $125 in his favor was entered. Brieske immediately thereafter left for the city of Marshfield, and then moved on to the city of Two Rivers. He returned to Wabeno, and on the 14th day of July moved his furniture to Two Rivers, where shortly afterwards he obtained employment. After working for the Hamilton Manufacturing Company for some time, he sustained an injury to his hand. For this injury he was awarded some compensation. Shortly after arriving in Two Rivers he had but five or six dollars left with which to pay his living expenses pending the receipt of his first wages. In October, 1929, Mrs. Brieske applied to the city of Two Rivers for aid, and received a two-dollar order from the secretary of the city manager. On June 24, 1930, Brieske applied to the city for aid. At that time he was given a five-dollar order, and on June 30, a fourteen-dollar order. When the bills were rendered to the city, the city deducted fifteen cents from the five-dollar bill rendered and ninety-four cents from the second order because said bills contained charges for cigarettes purchased by Brieske. From June 24, 1930, up to late in the year 1933, the city continued to render aid to Brieske and his family, except during short periods of time when he was employed.

On June 14, 1933, the county applied to the county judge of Manitowoc county for an order directing Brieske to return to the town of Wabeno, the place of his legal settlement, pursuant to the provisions of sec. 49.03 (9), Stats. The judge ordered that the matter be heard on July 24, 1933. Just what happened to that application does not appear. Another similar application was made on August 23, 1933, which was heard on September 18th, after the city of Two Rivers and the town of Wabeno had been given notice of such hearing. The three municipalities participated in the hearing. On petition of the city of Two Rivers, the hearing was thereafter opened for the reception of further evidence. The judge re-

viewed the evidence, and decided that on June 24, 1930, Brieske was not a pauper, and that he and his family had acquired a residence and legal settlement in the city of Two Rivers. The application of the county was accordingly dismissed. The decision or findings concluded thus:

"Let judgment be entered accordingly. Dated this 11th day of December, 1933. By the Court, JOHN CHLOUPEK, county judge."

Nothing purporting to be a judgment was ever entered.

The first question to be determined is whether the decision just referred to renders this controversy *res adjudicata*. This necessitates a construction of sec. 49.03 (9), Stats. That section is as follows:

"When a poor person is given relief in some other county or municipality than the one in which he has a legal settlement, either county or municipality involved may apply to the county judge or municipal judge of its county or municipality for an order directing such poor person to return to the county or municipality of his legal settlement, all expenses of removal to be paid by the county or municipality in which such poor person has a legal residence or settlement. Upon the filing of such petition the county or municipal judge shall issue an order directing the poor person to return to such municipality, unless it shall clearly appear that such removal would be against his best interests. Upon issuance of any such order no further public relief shall be given to the person to whom it is directed until he shall comply therewith."

In *In re Jeness*, 218 Wis. 447, 261 N. W. 415, which was an appeal from an order made in purported compliance with sec. 49.03 (9), Stats., and which directed that Mrs. Jeness be returned to Chippewa county, the place of her legal settlement, it was held that such order was not appealable. Sec. 49.03 (9) was in no other respect construed.

A careful consideration of sec. 49.03 (9), Stats., does not clearly reveal just what object or purpose the legislature sought to accomplish, or just what evils connected with the

administration of poor relief were sought to be remedied. The bill as originally introduced (No. 171, A., Sess. 1931) quite clearly reveals that its author had in mind a situation where a poor person, unquestionably having a legal settlement in a certain place, is being aided by another municipality, and stubbornly refuses to return to the place of his legal settlement, and the need of a remedy which could be invoked by the municipality where he had a legal settlement to compel him to return thereto upon pain of having further public relief cut off.

The bill as amended and finally enacted is somewhat broader in its scope, in that it gives to the municipality rendering aid to such a poor person the right to obtain an order directing that he be returned to the municipality where he has a legal settlement.

The statute specifically provides that upon the filing of such petition, or application, the county or municipal judge shall issue an order directing the poor person to return to the municipality in which he has a legal settlement unless it shall clearly appear that such removal would be against his best interests.   It further provides that upon issuance of such an order no further public relief shall be given to the person to whom it is directed unless he shall comply therewith.   It will be observed that the application is to the county or municipal judge, not to the county or municipal court; that there is no requirement that notice be given to any other municipality; that the judge is not required to determine any question as to the residence or legal settlement of the person being aided or as to liability for aid rendered.   The statute provides for no appeal from any such order.  *In re Jeness, supra.*

While the legislative purpose and intention are not entirely clear, we conclude that the legislature must have intended to provide a summary remedy which could be speedily invoked by either the county or municipality where the poor person had a legal settlement, or by the county or municipality where

he is actually residing and receiving aid, to coerce a poor person who obstinately refuses to return to the municipality of his legal settlement and unreasonably insists on being supported at the place of his residence at the expense of the municipality where he has a legal settlement, and that the remedy should be invoked only in situations where there is no dispute concerning the place of his legal settlement. So construing the statute, the only question that a judge can or need determine is whether such removal will be against the best interests of the poor person. That the legislature intended that a county or municipal judge, not a court, should have the power to determine in such proceedings, once and for all, such questions as usually arise in disputes concerning aid or relief to poor persons, seems most unreasonable. Enforcement of such orders are coerced by denying further relief in case the poor person fails to comply therewith. This construction obviates the necessity of attributing to the legislature, (1) an intention to confer purely judicial powers upon the judges of the county or municipal courts, or (2) an intention to deny to municipalities the right to trial by jury, in either of which cases serious constitutional questions might arise. (1) Sec. 2, art. VII, Wis. Const.; *Attorney General v. McDonald,* 3 Wis. * 805; *Milwaukee Industrial School v. Supervisors of Milwaukee County,* 40 Wis. 328; *Madregano v. Wisconsin Gas & Electric Co.* 181 Wis. 611, 195 N. W. 861; *Rider-Wallis Co. v. Fogo,* 102 Wis. 536, 78 N. W. 767. (2) Sec. 5, art. I, Wis. Const.; *State ex rel. Schumacher v. Markham,* 160 Wis. 431, 152 N. W. 161.

We conclude that the decision or order made by the county judge was not conclusive upon the parties and does not render this controversy *res adjudicata.*

Is there evidence in the record which supports the finding of the jury that on or about June 24, 1930, Brieske was a poor person within the meaning of the statute? The trial court in its instructions to the jury fully and correctly ex-

plained the nature of the issue, the question to be determined, and the applicable rules of law. The jury could not have misunderstood that the questions related to the status and condition of Brieske on or about June 24, 1930, which was within one year from the time that his residence in the city of Two Rivers commenced. We deem it unnecessary to do more than summarize the evidence bearing upon Brieske's status as of June 24, 1930. While he had worked much of the time while residing in Two Rivers except when disabled and had received small amounts of compensation up to April 21st, he had no income of any consequence during May and none in June. On June 24th, he was two to three months in arrears on his rent; he was indebted to his grocer in the sum of about $200; he had been refused further credit; he had no property except his household furniture and an old Ford automobile which he subsequently sold for $10. His condition on June 24th, when he applied to Mr. Donnelly, the city manager, for aid, is stated thus by Brieske:

"I asked him for help because I was down and out, I had no income and no money, and the grocer would not run any more accounts, so I had to ask."

Pursuant to that request aid was rendered, and from that time on for several years he was almost continuously aided by the city of Two Rivers. Whether persons are properly furnished support or aid because of their poverty, destitution, or pauperism is ordinarily a question of fact. *Scott v. Clayton,* 51 Wis. 185, 8 N. W. 171; *Port Washington v. Saukville,* 62 Wis. 454, 22 N. W. 717; *Ettrick v. Bangor,* 84 Wis. 256, 54 N. W. 401.

*By the Court.*—Judgment affirmed.