Dane County, Respondent, vs. Barron County, Defendant : Town of Rice Lake, Appellant.*

*January 13—February 25, 1947.*

---

\* Motion for rehearing denied, with $25 costs, on May 13, 1947.

For the appellant there was a brief by *A. J. Connors* of Rice Lake and *Wilkie, Toebaas, Hart & Jackman* of Madison, and oral argument by *Horace W. Wilkie* and *Harold M. Wilkie*.

For the respondent there was a brief by *Norris Maloney*, district attorney of Dane county, and oral argument by *Mr. Maloney* and *Mr. George E. Rapp*, deputy district attorney.

ROSENBERRY, C. J. We shall state only such facts as are necessary to a disposition of the principal questions raised in this case. First, we shall consider the contention of the defendant that the department had no jurisdiction to try and determine the question of the liability of the town of Rice Lake for the reason that sec. 49.03 (8a), Stats., was void because of an unconstitutional delegation of judicial power to the board. Counsel requests the court to re-examine *Holland v. Cedar Grove* (1939), 230 Wis. 177, 282 N. W. 111, 282 N. W. 448, and overrule it.

*Holland v. Cedar Grove* was decided February 7, 1939. The statute there under consideration was sec. 49.03 (8a), Stats. of 1937. By ch. 242, Laws of 1939, sub. (8a) of sec. 49.03 of the statutes of 1937 was repealed and recreated and as so recreated became a part of the statutes of 1939. The amendment of 1939 disposed of most, if not all, of the objections urged against the section in the case of *Holland v. Cedar Grove, supra.*

One of the principal objections urged against sec. 49.03 (8a) of the statutes of 1937, was that sec. 49.03 (8a) of the statutes of 1937 did not do away with a pre-existing statutory action in favor of a county which had paid for the relief of a pauper having a legal residence elsewhere. By the amendment it was provided:

"(8a) (a) All relief claims by one municipality or county against another municipality or county which have been disallowed or which have not been acted upon as required by statute, may be prosecuted before *the industrial commission which is hereby given the exclusive power and duty to hear, try and determine such* controversies and to render its findings therein. . . ."

We have given the arguments of counsel careful consideration and see no reason for reversing the conclusions reached in *Holland v. Cedar Grove, supra.*

The amendment certainly removed the objection that the previously existing statutory action had not been destroyed.

Second, it is undisputed in this case that if Maurice Connery did not gain a residence in the county of Dane between August 1, 1932, and August 1, 1933, the order of the circuit court should be affirmed. Connery arrived in Madison from Illinois in October, 1931. He was a transient. After his arrival in Madison, he obtained some employment as an extra cook at various restaurants in the city and, after a lapse of a few weeks, married Lucille O'Donnell on February 24, 1932, who at the time of her marriage was the mother of two illegitimate children, which Connery adopted in 1935. At the time of their marriage, between them, they had two or three dollars. After the marriage and up until 1932, both Mr. and Mrs. Connery were employed to some extent. On May 1, 1933, Mrs. Connery left her employment due to illness, Connery continued to work as an extra cook whenever he could procure employment. His average earnings were $9 to $10 a week. Some weeks he testified that he worked but a single day but thought on the average he was employed two or three days a week at $3 a day.

Connery applied for assistance on July 25, 1933. Assistance was granted the Connery family in July, August, and September as follows:

| Date Paid | Date of Grant 1933 | Type of Aid | Amount |
|---|---|---|---|
| July 28 |  | Utility (June 8 to July 10) | $1.10 |
| Aug. 3 | 6–25 to 7–25 | Rent (back) ........... | 15.00 |
| Aug. 28 | 7–25 | Groceries ............. | 4.30 |
| Aug. 17 | 7–26 | Kerosene ............. | .45 |
| Sep. 30 | 7–10 to 8– 8 | Utility ............... | 1.02 |
|  |  | Clothing ............... | .80 |
| Sep. 2 | 7–25 to 8–25 | Rent (back) ........... | 15.00 |
|  |  | Total .............. | $37.68 |

After September 2, 1933, the following items were paid for which were authorized during August:

Groceries from August 1 to August 22.................. $15.76
Fuel authorized August 2............................. .45
Medical expense granted August 1..................... 3.00

We cannot set out all of the detailed facts as to which there is conflicting evidence relating to the amounts received by the Connery family. It is undisputed that the amounts stated above were received. The principal claims made on behalf of the defendant are, (1) that Connery by reason of his employment and the use of his credit based thereon could have provided for his family; (2) that a person must make a fair effort to meet his expenses, and in the absence of such effort he does not acquire the status of a pauper by receiving public assistance. These contentions raise questions of law. We shall consider them in their order.

Sec. 49.03 (1), Stats., provides: "When any person not having a legal settlement therein shall be taken sick, lame, or otherwise disabled in any town, city or village, or from any other cause shall be in need of relief as a poor person and shall not have money or property to pay his board, maintenance, attendance and medical aid and shall make a sworn statement as to his legal settlement, the town board, village board or common council shall provide such assistance to such persons as it may deem just and necessary, and if he shall die, it shall give him a decent burial. It shall make such allowance for such board, maintenance, nursing, medical aid and burial expenses as it shall deem just, and order the same to be paid out of

the town, city, or village treasury." (Stats. 1943 and prior.)

Sec. 49.02 (4), Stats., provides: "Every person of full age who shall have resided in any town, village or city in this state one whole year shall thereby gain a settlement therein; *but no residence of a person in any town, village or city while supported therein as a pauper* . . . shall operate to give such person a settlement therein. . . ." (Stats. 1943 and prior.)

The statutes in force at the time involved in this case did not define the term "pauper" nor was the term "poor person" defined. It is to be noted that sec. 49.03, Stats., under which the local municipality is required to give such assistance as it may deem just and necessary, uses the words "poor persons" while in sec. 49.02 (4), relating to settlement, the term "pauper" is used. Taking all the provisions of ch. 49, Stats., into consideration in connection with the purpose and object sought to be attained thereby, the words "pauper" and "poor person" must be held to be practically synonymous. When a poor person in need of assistance as stated in sec. 49.03 (1) receives assistance under that section, that is what the municipality furnishing the relief is entitled to be paid by the place of his legal settlement. If this is not true, a municipality which is required to furnish assistance to a "poor person" would assume the risk of furnishing assistance for which the place of settlement was not liable. It is apparent from the statute that the support received by a person which prevents him from acquiring a residence in the place where the assistance is furnished is the assistance furnished him under the provisions of sec. 49.03. It is to be noted that by ch. 585, Laws of 1945, the entire ch. 49, Stats., was revised and in the revision the term "pauper" is dropped as well as "poor person" and the phrase "dependent person" substituted for them. "Dependent person" is defined by the statute to be a person without—

"the present available money or income or property or credit, or other means by which the same can be presently obtained, sufficient to provide the necessary commodities and services

specified in subsection (1) [which defines relief]." (Sec. 49.01 (4), Stats. 1945.)

We do not mean to intimate that the revision of 1945 governs this case. But in the chapter as amended the same term "dependent person" is used in the section requiring relief to be furnished (sec. 49.02, Stats. 1945) that is used in the section relating to settlement (sec. 49.10, Stats. 1945) indicating that "pauper" means the same thing as "poor person in need of relief."

The statute of 1939 relating to appeals was as follows:

Sec. 49.03 (8a) (d) : "Such appeal shall be heard upon the record made before the commission. The findings of fact made by the commission, acting within its powers, shall, in the absence of fraud, be conclusive. . . . Such findings and order shall be set aside only upon the following grounds: (1) that the commission acted without or in excess of its powers, (2) that the findings were procured by fraud, (3) that the findings of fact by the commission do not support the order."

The department, which is the successor of the industrial commission, found:

"(2) That Maurice Connery came to the state of Wisconsin and took up residence in the city of Madison, Dane county, in October, 1931, and has thereafter continuously resided therein.

"(3) That Maurice Connery has never lived for one full year in the city of Madison, without being supported as a pauper."

The commission found that Maurice Connery married Lucille O'Donnell on February 24, 1932; that she was at the time of her marriage a minor, she being born March 24, 1911; that Joseph O'Donnell, the father of Mrs. Lucille Connery, resided continuously in the town of Rice Lake, Barron county, from March 5, 1930, to June 18, 1932, without receiving any form of aid; that the relief claimed here as $82.24 is for aid given Mrs. Lucille Connery and her six minor children from July 1 to July 28, 1940, and was arrived at by deducting one

eighth of the aid given in said month of July, 1940; that the Connery family stood in need of support as poor and indigent persons at all times material to these proceedings.

Under the decision in *Holland v. Cedar Grove, supra,* there being no fraud, the question of need was determined by the relief authorities of the city of Madison, and the finding is not open to question on appeal under the provisions of sec. 49.03 (8a) (d), Stats. 1939.

It is argued that Connery was not "supported as a pauper" within the meaning of the statute, sec. 49.02 (4), Stats. 1931, and therefore gained a residence in Dane county in 1932–1933. It is contended that he might have used his credit; that the aid furnished was not for his personal use and was not of sufficient moment to amount to support.

There can be no dispute that Connery was under a duty to support his wife, his child born January 31, 1933. They constituted his family. As we shall see, it is well established under poor-relief statutes that support furnished to a member of a family is deemed to be furnished to the person who is under a duty to support the family. This court held that where relief was furnished to an emancipated minor son, that neither the son nor the father gained a settlement in the county where the son resided and to which the father had removed. *La Crosse County v. Vernon County* (1940), 233 Wis. 664, 290 N. W. 279. See also 48 C. J., Paupers, p. 476, secs. 100, 101, 102, and cases cited.

The fact that Connery had not acquired a settlement in the state of Wisconsin did not relieve him from the obligation to support his family, and under the authorities when relief was furnished to members of his family, so far as acquiring a settlement was concerned, the relief was furnished to him and, having received relief as a pauper, the fact that he may have some scant resources of which he did not avail himself, does not alter the situation.

In *Scott v. Clayton* (1881), 51 Wis. 185, 8 N. W. 171, the court discussed fully the matter of the loss and acquisition of

settlement by poor persons and the meaning to be attributed to the phrase "supported as a pauper."

The question whether a person at the time support was furnished to him is a pauper within the meaning of the statute is a question of fact. *Holland v. Belgium* (1886), 66 Wis. 557, 29 N. W. 558. In that case it was held that the fact that a person, although in straitened circumstances, had money sufficient to enable him to support his family with the aid of relatives, sustained a finding that he was not a pauper.

In *Saukville v. Grafton* (1887), 68 Wis. 192, 31 N. W. 719, it was held that a person sixty years of age, who had been supported in the town of Grafton for six months at the expense of $1 per week, and who thereafter lived in the town of Grafton and worked for his board and clothes for four years, did not acquire a settlement in the town where he worked.

The meaning of the words "pauper" and "poor" are quite extensively discussed in a will case, *Estate of Hoffen* (1888), 70 Wis. 522, 36 N. W. 407.

A town in which a married man lived who had considerable property of value over and above incumbrances was not liable for support of the man and his wife as poor persons. *Rhine v. Sheboygan* (1892), 82 Wis. 352, 52 N. W. 444. In *Ettrick v. Bangor* (1893), 84 Wis. 256, 54 N. W. 401, it was held that where a father, not a pauper, used no part of the money furnished by the town for his own individual purposes, but used it for the purchase of necessities for weak-minded adult children, that the town furnishing the necessities was entitled to recover from the town of former residence.

A person who received aid out of the soldiers' relief fund provided by the state is precluded from gaining a settlement in another county where he received the aid on the ground that he was supported therein as a pauper. *Juneau County v. Wood County* (1901), 109 Wis. 330, 85 N. W. 387.

The determining factor whether a person was supported as a pauper is whether or not he received the support as a pauper. *Sheboygan County v. Sheboygan Falls* (1908), 135 Wis. 128, 115 N. W. 330.

In this state a distinction has been drawn between the degree of poverty and indigence which will entitle one to support from the town of his residence and that which will entitle him to temporary relief in an emergency. *Coffeen v. Preble* (1910), 142 Wis. 183, 125 N. W. 954. See note to this case 27 L. R. A. (N. S.) 1079.

While relief was furnished by Outagamie county to a mother who was being supported as a pauper, when her minor son was living with her and sharing in the relief received by her and he continued to live with her after attaining his majority and being married and to share the relief furnished her, he not being self-supporting, he was supported as a pauper within the meaning of the statute. *Outagamie County v. Iola* (1942), 240 Wis. 118, 2 N. W. (2d) 841.

In *Two Rivers v. Wabeno* (1936), 221 Wis. 158, 266 N. W. 178, it was held that where a person was furnished relief, although he had worked much of the time while residing in the town and had received small amounts of compensation, he had no income of any consequence during May and none in June, was indebted to his grocer in the sum of $200 and had no property except his household furniture and an old Ford automobile which he subsequently sold for $10, that he was properly held to be a poor person.

One who receives support from relatives and friends, who come to his assistance because of affection or family pride, does not thereby become a pauper. *Ellington v. Industrial Comm.* (1937) 225 Wis. 169, 273 N. W. 530.

Upon the general topic of under what circumstances a poor person is entitled to receive relief, see *Peabody v. Holland* (1935), 107 Vt. 237, 178 Atl. 888, 98 A. L. R. 866, and note beginning at p. 870.

From these authorities we conclude that support was furnished to Connery and received by him as a pauper or poor person, and as a consequence he gained no settlement in Dane county. There is a good deal of confusion in the cases in regard to the meaning of these words because they are used in different senses. See *Estate of Hoffen, supra,* at p. 527.

It is considered the department correctly held that Connery was at all times during 1932 and 1933 a pauper; that he received assistance as a pauper (or dependent poor person) and that he never acquired a residence in Dane county.

We have reviewed the authorities because this case was presented on the basis that, because relief was not furnished to Connery personally but to his family in part, he was not supported as a pauper in Dane county. As we have seen, that contention cannot be sustained. As is said in the cases, the question whether one is a pauper or poor person is one which must be determined upon the facts of each case. A person with some property or resources under certain circumstances may be a pauper, but under certain other circumstances he may not be. It is a matter not to be determined by any rigid rule of thumb or by concepts as to what a pauper is which had their origin in the poor laws of the time of Queen Elizabeth.

*By the Court.*—Judgment affirmed.

FOWLER and RECTOR, JJ., dissent.

The following memorandum was filed May 13, 1947:

ROSENBERRY, C. J. (*on motion for rehearing*). In the opinion in this case the following paragraph appears: (p. 628.)

"It is considered the department correctly held that Connery was at all times during 1932 and 1933 a pauper; that he received assistance as a pauper (or dependent poor person) and that he never acquired a residence in Dane county."

On motion for rehearing, our attention is called to the fact that this is not a correct statement. That is true and the paragraph is stricken from the opinion and the following is substituted therefor:

"It is considered the department correctly held that Connery received assistance as a pauper (or dependent poor person) and that he never acquired a residence in Dane county during 1932 and 1933."

*By the Court.*—Motion for rehearing denied with $25 costs.