Town of Holland, Appellant, vs. Village of Cedar Grove, imp., Respondent.

*September 16, 1938—February 7, 1939.*

178

For the appellant there were briefs by *Herman Runge* of Sheboygan and *Olin & Butler* of Madison, and oral argument by *Clifford G. Mathys* of Madison.

For the respondent there were briefs by *Buchen, Federer & Grote* of Sheboygan, and oral argument by *J. F. Federer.*

A brief was also filed by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, as *amicus curiæ.*

The following opinion was filed November 9, 1938:

ROSENBERRY, C. J.   In this case there are the same procedural defects that were dealt with in *Milwaukee County v. Industrial Comm.* (1938), 228 Wis. 94, 279 N. W. 655. For the reasons stated there the circuit court had jurisdiction to review the record made before the Industrial Commission. In that case the appeal was taken by the Industrial Commission and the appeal was dismissed for the reason there stated, the Industrial Commission not being a party under the statute.   In this case the appeal is taken by a party and this court acquires jurisdiction thereby.

From the complaint and the findings of the Industrial Commission it appears that the village of Cedar Grove is a municipal corporation within the county of Sheboygan; that the town of Holland is a municipal corporation within said county.   It is alleged that Herbert Prange and his wife, Louise Prange, had their legal settlement in the town of Holland up to the time of her death on December 13, 1936;

"That on or about April 1, 1935, said Herbert Prange and Louise Prange became in need of relief as poor persons in said village of Cedar Grove, and had no money or property to pay their board, maintenance, attendance, and medical aid,

they then having no legal settlement in said village of Cedar Grove and having their legal settlement in said town of Holland. That on or about April 10, 1935, said Herbert Prange made and filed with the clerk of said village of Cedar Grove a sworn written statement that his legal settlement was in said town of Holland."

That thereupon the said village of Cedar Grove provided such assistance for said Herbert Prange and Louise Prange as it deemed just and necessary, and paid same out of the treasury of said village.

It is then alleged that the proper statutory notices were served; that the total amount of relief furnished between April 1, 1935, and December 28, 1936, amounted to $970; that no part of the claim has been paid by Sheboygan county or by the town of Holland, and that the town of Holland disallowed said claim and the whole thereof. Plaintiff prays that it have a determination or judgment against the county of Sheboygan and the town of Holland for said sum.

Upon the trial the Industrial Commission found that the Pranges were legally settled in the town of Holland and entered a determination.

"That the secretary of state shall collect from the town of Holland as a state special tax according to law in such case made and provided, the sum of $981 and that the state treasurer shall remit such amount so collected to the village of Cedar Grove."

The circuit court affirmed the findings of the Industrial Commission under the rule that if there was any credible evidence to support it, the findings must be affirmed.

While the question does not appear to have been raised either before the Industrial Commission or the circuit court, it is contended here that the statute, sec. 49.03 (8a), which in par. (a) confers upon the Industrial Commission—

"the jurisdiction and power and duty to hear, try and determine such claims and render decisions thereon between counties and between counties and other municipalities,"

and prescribes the procedure therefor is unconstitutional and void for the reason that it delegates to the Industrial Commission judicial power which is vested by the constitution (sec. 2, art. VII) in the courts.

In order to determine the question presented it will be necessary for the court to analyze and explore the provisions of the statutes relating to the relief of poor persons. (Ch. 49, Stats.)

Sec. 49.03 (1), Stats., provides: "When any person not having a legal settlement therein shall be taken sick, lame, or otherwise disabled in any town, city or village, or from any other cause shall be in need of relief as a poor person and shall not have money or property to pay his board, maintenance, attendance and medical aid and shall make a sworn statement as to his legal settlement, the town board, village board or common council shall provide such assistance to such persons as it may deem just and necessary, and if he shall die, it shall give him a decent burial. It shall make such allowance for such board, maintenance, nursing, medical aid and burial expenses as it shall deem just, and order the same to be paid out of the town, city, or village treasury."

This subsection is, in substance, the same as sec. 20 of ch. 28 of the statutes of 1849. There have been some amendments, but none which are material so far as determination of the questions raised in this case are concerned. While the relief to be furnished under sub. (1) seems to be for temporary purposes, sub. (5) provides:

"The authorities having charge of the poor of the municipality in which such person claims a legal settlement, and until they shall do so, the authorities having charge of the poor of the county in which such person may be, may take charge of such poor person and relieve him in such other manner as they deem proper."

While the question does not seem to have been considered in this state, it has been held in other jurisdictions under statutes similar to sub. (1) that the state commits to the municipal authorities the *quasi*-judicial duty of determining

first whether the person is in need of relief, and, second, what amount should justly be allowed for relief. It has been held that where they act in good faith and without abuse of discretion their action is not subject to review. *Hardin County v. Wright County* (1885), 67 Iowa, 127, 24 N. W. 754; *Board of Commissioners of Warren County v. Osburn* (1892), 4 Ind. App. 590, 31 N. E. 541; *Wood v. Boone County* (1911), 153 Iowa, 92, 133 N. W. 377, 39 L. R. A. (N. S.) 168.

If the local authorities determine that a transient is justly in need of an allowance for relief it is their duty to furnish it, and the expenses are to be borne by the town, city, or village treasury. Sub. (2) provides that "the expenses so incurred shall be a charge against the county."

Sub. (3) provides that the clerk of the municipality furnishing the relief shall within ten days after such person becomes a public charge serve upon the county clerk of his county a written notice, stating the name of the person who has received public aid, the name of the municipality where such person claims a legal settlement or, if such place could not after due diligence be ascertained, a statement of such fact, and the date on which such support was furnished. It is further provided that if notice should not be given within ten days, the county shall be liable only for the expense incurred thereafter.

Sub. (4) provides that the county clerk shall file such notice in his office, and within ten days after receipt thereof shall serve like notice upon the county clerk of the county in which such person claims his legal settlement, and the county clerk is charged with the duty of at once forwarding such notice to the clerk of the town, city, or village in which such person claims legal settlement. If the municipality of legal settlement is within the same county as the municipality furnishing transient relief, the county clerk is to notify the clerk

of that municipality. In case of failure to file such notice, then the municipality of legal settlement shall be liable for the expense incurred only for the time after the giving of the notice. If the clerk of the town, city, or village notified shall fail to deny responsibility within ten days from the time of receipt of the notice, such municipality shall be liable for the expense and support of such poor person until such denial shall be sent to the clerk of the municipality or county giving the relief.

Sub. (6) provides: "The clerk of any municipality which may disallow a claim for such expenses or any part thereof, shall within ten days after such disallowance, notify in writing the county clerk of the county making such claim of the action thereon. . . ."

Sub. (7) provides: "Upon receipt of notice of the disallowance of the claim of any county, the county clerk receiving such notice shall forthwith notify the district attorney of his county, who shall be authorized and empowered to institute an action in the name of the county, for the recovery of so much of said claim as shall have been disallowed. . . ."

In our consideration of the questions raised here we shall consider the matter as if all of the requisite statutory notices had been given when and as required. Any other method of treatment would require constant exception and repetition.

In the first place, it is to be noted that the relief is to be furnished by the municipality where the transient poor person is found in need of it. When furnished it is to be paid for out of the municipal treasury. The expenses so incurred shall be a charge against the county. Under the language of the statute, the county in which the municipality furnishing relief is located, is made liable for the acts of the municipal authorities furnishing relief. If the county cannot collect from the municipality of local settlement under the statute, the county becomes liable for the amount of relief furnished. The liability of the county is in no way dependent on the

right to recover the amount allowed from the municipality of legal settlement. If the transient has no legal settlement within the state the burden falls upon the county. The language of sub. (2) is: "The account therefor shall be audited by the county board and paid out of the county treasury." The county is given no option. No doubt this is subject to the rule that qualifies all official action, that is, that the officers making the allowance shall act in good faith, without abuse of discretion or fraud. No action can be begun under the statute except by the county in which the relief is furnished. Such cases as *Holland v. Belgium* (1886), 66 Wis. 557, 29 N. W. 558, are not in point for the reason that the statutes of 1878, sec. 1514, gave the town furnishing relief a cause of action against the municipality of settlement. We have not cited and commented upon all of the cases because of the numerous amendments to the statutes. To set out the statutes and point out the distinctions would unduly extend this opinion and serve no useful purpose. In some cases the questions dealt with in this case were not raised.

In this case it appears from the allegations of the complaint that Sheboygan county, the county in which the village of Cedar Grove is situated, has declined to comply with the statute. In such an event it would appear that the authorities of Sheboygan county have refused and failed to perform a plain ministerial duty for which the village of Cedar Grove has ample remedy in the law. Sec. 49.03, Stats., makes no provision for an action by anyone except by the county where the relief is furnished against the municipality of settlement. The language of sub. (2) of the statute is:

"The account therefor shall be audited by the county board and paid out of the county treasury, and may be recovered by said county of the town, city or village in which such person so relieved has a legal settlement."

The language of this subsection is clear and explicit. The county cannot by refusing or failing to perform its statutory

duty under sub. (2) require a town within its borders furnishing relief to commence an action against it. It may of course be subject to an action to compel the county authorities to comply with the statute.

In this connection the language of sub. (7) is to be noted:

"Upon receipt of notice of the disallowance of the claim of any county, the county clerk receiving such notice shall forthwith notify the district attorney of his county, who shall be authorized and empowered to institute an action in the name of the county," etc.

The only action to be begun is by the county against which the relief is charged against the municipality of legal settlement. This clearly applies to counties and not to the municipality furnishing relief. This conclusion is strengthened by the provisions of sub. (7) which provide that no county shall be required to give a bond, etc. The provisions of sec. 49.03 (1) to and inclusive of sub. (8), Stats., have in substance been in the statutes for many years, and were substantially the same at the time of the enactment of ch. 453, Laws of 1935, creating sub. (8a), the constitutionality of which is now being attacked.

Sub. (8a) (a) provides: "Such action shall be commenced before the industrial commission," etc. This language must of necessity refer to the action which the district attorney is authorized to bring when he receives notice of the disallowance of the claim of the county from the county clerk of his county. (See sec. 49.03 (7), Stats.) In such an action what questions are open for adjudication? They are first, Was the person furnished relief a poor person? And, second, Where did the poor person have his legal settlement? This court has held that whether the person furnished with relief is a poor person is a question of fact. *Sheboygan County v. Sheboygan Falls* (1906), 130 Wis. 93, 109 N. W. 1030; *Holland v. Belgium* (1886), 66 Wis. 557, 29 N. W. 558. Whether or not the poor person was legally settled in the

town claimed is to be determined in accordance with the provisions of sec. 49.02, and is likewise a question of fact. When these two questions of fact have been determined, and there has been no abuse of discretion or fraud on the part of the officers furnishing relief, the whole matter has been determined. There is no more reason to suppose that municipal officers furnishing relief will act fraudulently or abuse their discretion than there is to suppose that any other administrative officer will so act. If they do so act there is ample remedy in the law for all parties whose interests may be affected.

Sec. 49.03 (8a), Stats., commits to the Industrial Commission the power and duty to hear, try, and determine such claims. The decisions as to the need of the poor person and the kind and amount of relief to be allowed him being committed to officials furnishing the relief and made a charge against the county in which the relief is furnished, no other questions remain open for consideration but those relating to the status and place of settlement of the person furnished relief. To meet this simple situation there is provided by sub. (8a) an elaborate procedure in which language applicable only to courts having full judicial powers is used, and which if given its literal meaning would constitute the Industrial Commission a glorified court of illimitable jurisdiction in matters relating to relief. It is the failure to recognize the nature of the subject matter dealt with that undoubtedly led the legislature to employ the terms used. While it speaks of an action, the proceeding under the statute is not an action. No judgment is to be rendered or entered, and while it provides for a trial it provides for no jury, although the subsection contains a provision in par. (b) to the effect that— "Laws on pleadings, procedure, and evidence shall govern unless inapplicable."

The Industrial Commission is given power in par. (a) to "make such rules and regulations not inconsistent herewith".

as will enable it to effectually perform its duties, etc. If the law relating to pleadings and procedure applies there would seem to be no need for other rules. To make assurance doubly sure it is provided in par. (a) that "it [Industrial Commission] shall not be restricted because of failure of enumeration of powers."

What happens in a proceeding under the provisions of sub. (8a) is that in case of dispute within the narrow limits prescribed by sub. (7), the commission is given authority to determine whether the person aided was a poor person and what municipality was the place of his legal settlement. This is a purely fact-finding function. When the facts are determined, or if there is an appeal, when the matter is finally determined upon appeal, the commission is to certify the amount determined, which will be the amount of relief furnished, to the secretary of state. The amount so certified is to be collected as are other special state charges against counties and municipalities. Disregarding, as we must, the overelaborate language of the act, and looking to the substance rather than to the form of things, the question presented for decision is, Does the act which confers upon the Industrial Commission power to determine the facts delegate to the Industrial Commission judicial powers which may be exercised only by a court? In recent years the matter of the delegation of judicial powers to administrative agencies has produced many serious and perplexing questions. The matter was dealt with in a very comprehensive and learned opinion by the supreme court of the state of New Hampshire, *Opinion of the Justices* (1935), 87 N. H. 492, 493, 179 Atl. 344, 110 A. L. R. 819. In the course of its opinion the court said:

"In the connection between the departments some overlapping is permissible, and there is a region of authority, alternative and concurrent, the boundaries of which are fixed by no final rule. As a rule which meets most situa-

tions, when an executive board has regulatory functions, it may hear and determine controversies which are incidental thereto, but if the duty is primarily to decide questions of legal right between private parties, the function belongs to the judiciary. . . .

"The creation of an executive board is justified if its service is to determine and maintain a public right or interest. To accomplish its purposes judicial powers may be necessarily exerted. But they must concern matters of an executive character. They are proper if it may fairly be said that there is need of them in order to produce an efficient and effective administrative enforcement of the public interest."

By way of illustration the court refers to the matter of taxation and to the fact that taxing officers exercise many judicial functions. No doubt a larger measure of judicial power may be conferred upon an administrative tribunal as a necessary incident to the discharge of its functions than could be conferred upon it in a matter wholly independent of the discharge of its primary duties. The determination of the extent of the power which may be granted depends under the decision to a considerable degree upon the necessities of the situation.

In this case we are not dealing with private parties. No interest is involved except that of the public. By sub. (8a) the Industrial Commission is given the power to determine no questions except those arising in a controversy between municipalities. The whole matter of poor relief is of statutory origin. Municipalities in the absence of statute are under no obligation to furnish relief to poor persons. That was true at common law and is still true although relief has been furnished under statutory provisions so long that in the minds of the general public it is now regarded as a municipal duty. *Patrick v. Baldwin* (1901), 109 Wis. 342, 85 N. W. 274. See also *Martin v. Fond du Lac County* (1906), 127 Wis. 586, 106 N. W. 1095. For citation of authorities see 39 L. R. A. (N. S.) 161. There are no equities between

municipalities in respect to caring for and supporting pau-.pers. The whole matter being purely and strictly statutory, there is no liability where a statute imposes none. *Morristown v. Hardwick* (1908), 81 Vt. 31, 69 Atl. 152. The matter of poor relief being of purely statutory origin, the legislature has very large powers with respect thereto. It may impose duties and liabilities upon its creatures, the various municipal corporations of the state, in accordance with its discretion provided no provision of the constitution is violated. Except with respect to their property rights municipal corporations have a limited protection against acts of the state legislature under the constitutional guaranties. In a well-considered case, the Connecticut supreme court of errors said:

"Municipalities, as political subdivisions of the state, created for public purposes and having their powers, rights, and duties conferred and imposed by the state through the legislature, are subject to its will and liable to have any such rights or duties modified or abolished by it, and not to be regarded as thereby being deprived of any vested rights." *Sanger v. Bridgeport* (1938), 124 Conn. 183, 198 Atl. 746, 116 A. L. R. 1031, 1035. See authorities cited in note beginning at page 1037.

This is the general rule and it is the rule in this state. Municipal corporations have no private powers or rights as against the state. They may have lawfully entered into contracts with third persons which contracts will be protected by the constitution, but beyond that they hold their powers from the state and they can be taken away by the state at pleasure. *Richland County v. Richland Center* (1884), 59 Wis. 591, 18 N. W. 497; *Frederick v. Douglas County* (1897), 96 Wis. 411, 71 N. W. 798.

The legislature having full power with respect to the furnishing of poor relief, it may prescribe the conditions under which it is to be furnished; the municipality to be charged with the duty of furnishing it and what municipality shall be

ultimately liable. May a municipality complain because the legislature has seen fit in the administration of relief matters to vest the determination of certain factual matters in an administrative agency? The plaintiff contends that that question must be answered in the affirmative upon the authority of *State ex rel. McCurdy v. Tappan* (1872), 29 Wis. 664. That case involved a controversy respecting the payment of bounty money to a soldier. The legislature enacted a law by the terms of which it became the duty of the town of Oshkosh to pay the amount to the relator. The act of the legislature was held invalid on the ground that it adjudicated the liability of the defendant town. This it was held the legislature could not do. In the opinion reference was made by way of argument to the fact that the act also deprived the defendant town of the right of trial by jury. It is to be remembered in that case it was a contest between a private party and a municipality. It was a matter over which the court held that the legislature did not have plenary power such as it has over municipalities with relation to strictly governmental affairs.

This court has repeatedly held that the judicial power vested by the constitution in the courts cannot be exercised by administrative or executive agencies.

Having under consideration a statute which conferred upon the railroad commission, which among other things, authorized the commission—

"to do such things and pay such amounts as shall be just and necessary or proper, to place the state, the company, or the purchaser in the same situation that it, or they, would have been in had the provisions of such sections and of such permit been complied with"—

it was held in effect to confer upon the railroad commission the powers of an equity court and it was for that reason void. *Klein v. Barry* (1923), 182 Wis. 255, 263, 196 N. W. 457.

Every constitutional objection that may legitimately be urged against sub. (8a) was considered by this court in the case of *Forest County v. Langlade County* (1890), 76 Wis. 605, 606, 45 N. W. 598. By ch. 436, Laws of 1885, Langlade county was divided and Forest county created by the act. It was provided that the county boards of the respective counties should meet at the courthouse at Antigo—

"to adjust and settle all matters of property, debts, credits, assets and liabilities of Langlade county on the day when this act shall take effect, and for that purpose each and both of said county boards shall have all the powers necessary to a full and complete settlement of all matters between said counties. The territory hereby detached from Lincoln county and attached to Langlade county shall be liable for and chargeable with its just proportion of all the indebtedness of Lincoln county at the date when this act shall take effect, but shall not be liable for any of the indebtedness of Langlade county incurred prior to the taking effect of this act."

Ch. 334, Laws of 1885, was a general law and provided a method whereby the liabilities between municipalities newly created and the municipalities from which the territory was taken might be adjusted. The county boards of Forest county and Langlade county were unable to agree, and the legislature enacted ch. 537, Laws of 1887, to meet the situation. Ch. 537 provided that the judge of the Tenth judicial circuit should appoint three commissioners, one from Langlade county, one from Forest county, and one from the state at large, for the purpose of making a settlement. The commissioners were duly appointed, and from their decision an appeal was taken in accordance with the provisions of the act to the circuit court. The determination of the commissioners was appealed to the circuit court, and from the decision of the circuit court appeal was taken to this court. When the controversy was heard in this court it was claimed that ch. 537, Laws of 1887, was void because it unlawfully delegated judi-

cial powers to the commissioners. The court said (pp. 610, 612) :

"If this act be unconstitutional for that cause, then all the laws of this state which submit questions involving the rights of persons to any officers, boards, or persons other than the regularly constituted courts of the state, are void for that reason; the laws requiring certain claims against towns, counties, cities, and villages to be first submitted to the boards of supervisors of towns and counties, to the trustees of villages and the common councils of cities, are all void; and all laws appointing commissioners to estimate the damages of parties whose lands are taken for highways or for railroad purposes, and other laws too numerous to mention, are void. But this court has held all such laws valid in all cases where the decisions of such boards or commissioners or appraisers are not made final, and an appeal is given from their decisions to the regularly constituted courts of the state." (Citing cases.)

"As we have shown above, the legislature has plenary power over the question of the division of the assets and the liability for the debts of the old county from whose territory a new county, either in whole or in part, is created. And as the legislature might fix such rights absolutely, without referring the question to any other officers or to any court, it might be argued with great force they could provide for the determination of that question by commissioners or a board appointed for that purpose, and make their decision final. We do not, however, decide that question in this case."

The questions submitted to the commissioners to be appointed by the judge of the Tenth judicial circuit were very much broader in scope than matters submitted to the Industrial Commission by the provisions of sub. (8a), yet the act was upheld and the doctrine announced in that case has never been overruled or criticized so far as we are aware. We perceive no difference in principle between *Forest County v. Langlade County* and the case under consideration. The legislature was dealing with the rights of municipal corporations as against each other in a matter over which it had

plenary powers. The determination of the commissioners is not final under the provisions of the statute which created the commission to settle the disputes between Forest county and Langlade county, nor is the determination of the Industrial Commission final under sub. (8a). If anything the power of the legislature with respect to the duties and liabilities of municipalities for furnishing poor relief are more extensive than those respecting division of property belonging to two different municipalities. The statute makes no provision for the review of the determination of the municipal authorities who are required in the first instance to determine what allowance is just and to whom allowances may properly be made. Under the provisions of sub. (8a) the function of the Industrial Commission is purely that of fact-finding, and when the facts are found, they are directed to certain findings to the proper authorities. No individual rights are involved, either directly or remotely, and the constitutional guaranties as to individual rights for that reason have no application. Having in mind the nature of the powers conferred and the duties imposed upon the Industrial Commission by the provisions of sub. (8a) instead of the meaning of the inappropriate terms used in the act, it is considered that the subsection is valid and does not confer upon the Industrial Commission the exercise of judicial power which belongs exclusively to the courts.

We are unable to discover any statutory authority for the bringing of an action by the village of Cedar Grove against Sheboygan county such as was brought in this case. The terms of the statute are mandatory. The town board shall provide assistance, it shall make such allowance as it shall deem just, the expense incurred by it shall be a charge against the county. It is just as much the duty of the county to pay the expense incurred by the town as it is for the town to furnish the relief. The duties imposed are in exactly the same

category. If the county authorities should refuse to audit and pay the claim it would seem that *mandamus* is the proper remedy and not an action at law. Certainly the town furnishing the relief is required to file no claim, but merely an account which it becomes the duty of the county board to audit and pay. Nor has the county of Sheboygan under the terms of the statute any claim against the town of Holland until it has paid the claim. If the clerk of the town of settlement fails to deny responsibility by registered mail, the town of settlement becomes absolutely liable under the statute until it is sent. The only ground upon which the town of settlement can deny liability is that the person for whom allowance was made was not a poor person and had no settlement within the town. If the poor person had a settlement, and was furnished relief and was a poor person, the statute fixes the liability.

Upon the merits of the case we have carefully considered the evidence, the findings of the Industrial Commission, and the decision of the circuit court. The finding to the effect that Herbert Prange and his wife had a legal settlement in the town of Holland on April 1, 1935, and that it continued down to and including December 18, 1936, is amply supported by the evidence. Upon the merits no other question is raised.

Attention is again called to the fact that sub. (8a) (b) provides:

"Laws on pleadings, procedure, and evidence shall govern unless inapplicable and counterclaims may be heard and disposed of in the principal action."

Sec. 263.14 (1), Stats., defines counterclaim. "The counterclaim mentioned in sec. 263.13 must be one existing in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action, and arising out of one of the following causes of action." Under this defini-

tion just how there can be a counterclaim in a proceeding under sub. (8a) in which no judgment is ever rendered we are unable to see. Nor is "action on account of a statutory liability" one of the class of actions enumerated in sec. 263.14 (1). It is another instance of the improvident use of language. What was intended, it may be supposed, was that in case of mutual claims there might be, when the claims were duly established, some offset. Just how that situation might arise under the statute it is difficult to say, but it might arise in a very limited class of cases. Inasmuch as the statute provides for counterclaims and not for offsets and there can be no counterclaims, that provision of the statute must be treated as surplusage.

A disposition of the case presents some difficulties. The whole proceeding began by the village of Cedar Grove filing a so-called complaint against the county of Sheboygan and the town of Holland. As already pointed out, it was the duty of the county of Sheboygan to pay the claim, and in the event that it refused to do so, the remedy of the village of Cedar Grove was by *mandamus* to compel the performance of a statutory duty. The statute makes no provision for a liability direct from the town of settlement to the town furnishing relief. The matter is canalized through the county board. Sheboygan county has no claim against the town of Holland because it has made no payment. The whole matter is treated procedurally as if the Industrial Commission had all of the powers of a court of equity to settle claims and disputes not according to the mandate of the statute but according to the equities of the case. It is not necessary to say that it has no such power, nor could such power be conferred upon it. Upon the record as it stands we see no other disposition of the matter than to reverse the judgment of the circuit court, with directions to the circuit court to set aside and vacate the award upon the merits without prejudice to the right of the

municipalities involved to assert such rights as they may have in a proper proceeding under the statutes.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to enter judgment as indicated in the opinion.

FOWLER, J. (*dissenting*). So far as the decision of the court reverses the judgment of the circuit court and directs dismissal of the instant complaint I concur. But I dissent from the rulings of the court that sub. (8a) of sec. 49.03, Stats., hereinafter referred to as "(8a)," is constitutional. The ground upon which the reversal is based renders it unnecessary in this case to say anything about conferring of judicial power upon the Industrial Commission, but if anything is said upon that subject it should be held that (8a) is void because it confers such power.

The contention of the appellant upon that subject is that (8a) confers judicial power upon the Industrial Commission contrary to sec. 2, art. VII, of the state constitution which vests such power in "a supreme court, circuit courts, courts of probate, and in justices of the peace" and such other municipal and inferior courts as the legislature shall establish. As stated in the majority opinion herein, "this court has repeatedly held that the judicial power vested by [this section of] the constitution in the courts cannot be exercised by administrative or executive agencies," citing *Klein v. Barry,* 182 Wis. 255, 196 N. W. 457. The Industrial Commission is an "executive or administrative agency." Whether (8a) confers upon it the exercise of "the judicial power" depends on the facts involved and certain statutes.

The facts briefly stated are: The village of Cedar Grove pursuant to sec. 49.03, Stats., furnished aid to Herbert Prange as a "transient pauper." Prange was at the time residing in Cedar Grove, but represented his legal settlement as

in the town of Holland. The village applied for reimbursement from the county of Sheboygan wherein the village and town are located. The county did not pay the claim. The village thereupon began a proceeding before the Industrial Commission against the county and town under (8a) to recover the amount of its disbursement. The commission made what it designated a "determination" that the secretary of state should "collect from the town of Holland as a state special tax" $981, the amount of the disbursement, and remit the amount to the village. The circuit court affirmed the action of the commission.

The statutes involved are the poor laws, and so far as material here may be stated as follows: Sec. 49.01 provides that every "town, village and city shall relieve and support all poor and indigent persons lawfully settled therein whenever they shall stand in need," except as otherwise provided by statute. The exceptions are here immaterial.

Sec. 49.02 lays down the rules for determining where a poor person's legal settlement is. What these are is beside the question of conferring of judicial power.

Sec. 49.03 provides for "local relief of transient paupers," and it is this section that is here involved. Subs. (1) to (7), inclusive, stand now as they stood when (8a) was enacted in 1935. Sub. (1) provides that when a person being in a town, village, or city, and not having a legal settlement therein, shall be in need of relief as a poor person, and shall be without money or property with which to procure it, and shall make a sworn statement as to his legal settlement, the town or village board or the city council shall provide such assistance as it "shall deem just and necessary."

Sub. (2) makes expenses so incurred a charge against the county, requires that the expenditures shall be audited by the county board and paid from the county treasury, and provides that the amount may be collected by the county from

the town, village, or city wherein the person aided has his legal settlement if within the county, and if not from the county wherein he has it, and in the latter case the county reimbursing the amount may recover it from the local unit therein where the person aided has his legal settlement.

By subs. (3) and (4) notices are to be given to the municipality where the person's legal settlement is. Sub. (6) provides that when a local municipality shall deny a claim made by the county it shall give notice to the county clerk, and sub. (7) that when a county clerk shall receive such notice he shall notify the district attorney who shall "institute an action in the name of the county, for the recovery of so much of said claim as shall have been disallowed." Thus sec. 49.03 stood when (8a) was enacted, and it so stands now as to the administration of the poor laws.

Prior to the enactment of (8a) the procedure on denial of liability by the municipality where the person aided claimed his legal settlement was for the district attorney of the county to bring an action at law by the county against the town in a court having jurisdiction. Par. (a) of (8a) provides that "such action shall be commenced before the industrial commission which is hereby given the jurisdiction . . . to hear, try and determine such claims and render decisions thereon between counties and between counties and other municipalities." The subsection provides in par. (c) for an appeal to the circuit court. The subsection further provides in par. (d) that if the decision of the commission is affirmed by the court, or if there is no appeal, the "amount determined to be owing by a county or municipality shall be certified by the commission to the secretary of state," and that this sum shall be collected by him "as are other special state charges against counties and municipalities," and that he remit the amount to the "prevailing county or municipality."

Of (8a) the opinion of the court says that it uses "language applicable only to courts having full judicial powers . . .

which if given its literal meaning would constitute the Industrial Commission a glorified court of illimitable jurisdiction in matters relating to relief." With this statement I agree. I think we should take (8a) as it reads and give it effect according to its plain terms. That by it the legislature intended to confer judicial powers, and it was considered by them as conferring such powers, seems to me manifest from the portion of it above quoted. It is also manifest from the language of its par. (b) : "Laws on pleadings, procedure, and evidence shall govern unless inapplicable and *counterclaims* may be heard and disposed of in the principal action." This is also manifest from the closing clause of its par. (c) : "Costs . . . shall be adjudged against the losing party." The provision that "procedure and evidence shall govern" indicates clearly that the commission shall act as a court rather than as it acts in workmen's compensation cases. The procedure in such cases is altogether different from that of courts, and the commission in such cases receives statements and documents as evidence that are incompetent in court trials. The provision for trial of counterclaims also indicates conferring of judicial power. The opinion of the court passes this by saying in effect that it is inconceivable how one unit of municipal government can have a counterclaim against another and holds that the provision for trial of counterclaims is "mere surplusage" and should be "disregarded." The opinion concedes that in poor-relief cases one municipal unit may have an offset against the other, but that an offset is something different from a counterclaim. But counterclaims include offsets. They are more often interposed as counterclaims than set up by independent action in equity. It is held in *State ex rel. McCurdy v. Tappan,* 29 Wis. 664, that the imposition of costs is a judicial function, and that it can only be conferred upon courts as distinguished from commissions.

Ordinarily acts of legislatures are taken as meaning what they say when what they say is definite and certain. Con-

struction of a statute is resorted to only when its language is ambiguous, indefinite, and uncertain. There is nothing ambiguous, indefinite, or uncertain in (8a).

The opinion of the court argues that judicial power is not conferred by (8a) because exercise of judicial power implies entry of a judgment, and (8a) does not provide for entry of a judgment by the Industrial Commission. It does not use the term "judgment" except in its par. (c), but it uses the term "decision." But a judgment is a judgment even though it be denominated a "decision." The commission "determines" and "decides" what or whether anything is owing by the town to the county. A decision that Town A shall pay a stated amount to County B is a judgment that it shall so pay. True, it is not enforceable by an execution issued by the commission, but it is nevertheless a judgment. It is a judgment just as the judgment of a court in *mandamus* proceedings is a judgment. It is in effect a judgment in *mandamus* commanding the secretary of state to collect the sum the commission "determines" and "decides" is due. That the legislature used the term "decision" as meaning judgment is shown from the provision of par. (c) referring to the powers of the circuit court "in confirming or setting aside the judgment of the commission."

The opinion of the court states that the only questions committed to the Industrial Commission to decide are "those relating to the status and place of settlement of the person furnished relief." This is not correct. Sec. 49.03 (7), Stats., expressly declares that when a claim of a county against a town shall be disallowed, the district attorney of the county shall "institute an action in the name of the county, for the *recovery* of so much of said claim as shall have been disallowed." Thus determination of an amount less than the entire amount claimed was authorized in the action at law that existed on enactment of (8a). That covered questions of

fraud, bad faith, and excessive allowance through mistake or what not. Those questions were determinable in the action brought by the district attorney in a court. (8a) directs in par. (a) that "such action" shall be commenced before the commission which is given the "jurisdiction and power and duty to hear, try and determine such claims and render decisions thereon." Thus, as questions of fraud, bad faith, mistake, etc., were determinable in the action at law that lay before enactment of (8a), and as "such actions" are now turned over to the Industrial Commission to "hear, try and determine," the Industrial Commission is by the terms of the act empowered to hear, try, and determine questions of fraud, bad faith, mistake, etc.; just as the court determined them before the actions were turned over to the commission. The point is not, as stated in effect in the opinion of the court, that when questions of fraud, bad faith, mistake, etc., are involved protection against them lies in resorting to a suit in equity, but that these questions may by the terms of the act be tried by the Industrial Commission, because all that was decided in the action at law when (8a) was enacted is now committed to the commission for trial.

The opinion also states that the only questions committed to the commission to determine are: "First, Was the person furnished relief a poor person? And, second, Where did the poor person have his legal settlement?" This, as above stated, is not true, but if it were, what of it? The function of courts is to determine questions of ultimate fact and then determine and direct what payments shall be made in view of those facts. That is precisely what the Industrial Commission does in proceedings before it under the poor law, and in so doing it is functioning as a court.

I do not dispute that judicial power can in proper cases be exercised by boards, commissions, and administrative bodies, whatever called. It is so exercised to greater or less degree

by a multitude of boards and commissions. Commissions, so-called, are of comparatively recent origin, but boards of various kinds have exercised judicial power ever since the constitution of the state was adopted. Boards of review in taxation matters may be referred to as an example. Such boards in affirming or changing the assessments of property exercise the same kind of power that courts exercise in determining the value of property in cases coming before them for adjudication. This is judicial power. The power thus exercised by boards and commissions is often referred to as *quasi* judicial, but it is judicial power regardless of what it may be called.

But there is a clear and distinguishing difference between the judicial power exercised by boards and commissions and that exercised by the courts. Courts proceed to hear, try, and determine all sorts of cases at law and equity that are brought before them. The administrative boards and commissions, however, are limited in their exercise of judicial power to the exercise of such as is incidental to their administration of the particular statutes the legislature has given them to administer. The public service commission can exercise such judicial power as it is necessary for it to exercise in order to enable it to administer the statutes, administration of which has been conferred upon it. So of all commissions and boards. But for them to exercise judicial power the statutes must give them a statute to administer, and their exercise of such power is limited to what is incidental and reasonably necessary to the proper and efficient administration of the statutes that are committed to them for administration. The commission has nothing to do with the execution of the poor laws. The poor laws are administered locally by the officers of the several towns, villages, cities, and counties. The commission does not come into the picture until the local officers have concluded their administration of the poor laws, and the local municipality claimed to be liable has denied lia-

bility for the relief furnished. When liability has been denied by the local unit of government claimed to be liable, then action must be commenced by the county to recover the amount claimed. This invokes the exercise of judicial power only. It does not require the exercise of any administrative power whatever. Before the enactments of (8a) that power was exercised by the courts just as every other cause of action for the recovery of money by one municipality from another has always been exercised. (8a) takes the trial of that action away from the courts and places it with the commission, when the trial of that action or the collection of the claim involved is not incidental to any administrative power the commission possesses. This cannot constitutionally be done, as it would make the commission a court in this class of cases, nothing less and nothing else.

In support of the proposition next-above stated, I refer to the pronouncement of the New Hampshire supreme court in the *Opinion of the Justices,* 87 N. H. 492, 493, 179 Atl. 344, 110 A. L. R. 819, given to the legislature of that state on its request, under provisions of the constitution of that state authorizing such request by the legislature and requiring compliance by the court. The act submitted proposed a commission "intended to be an executive [administrative] tribunal, and not a court within the judiciary department of the state government." It proposed "to confer upon the commission power to adjudicate certain disputes of a legal character between individuals." After adverting to the constitutional separation of powers into executive, legislative, and judicial provided by the New Hampshire constitution, which is provided for in our own constitution also, and its implied requirement that the executive and judicial departments must refrain from exercising power the exercise of which belongs to the other, the opinion goes on to say:

"It is consistent with the constitution that executive officers should be vested with some judicial power. It is not

only convenient but necessary that it be given, in order that government may function. But it must be power needed to enable them to perform their executive duties. It may not be given them merely because it is thought that efficiency and convenience in the administration of a statute will be promoted thereby. 'The government has no need of action in violation of the constitution.' *Goodrich Falls Co. v. Howard,* 86 N. H. 512, 521, 171 Atl. 761, 766.

"In the connection between the departments some overlapping is permissible, and there is a region of authority, alternative and concurrent, the boundaries of which are fixed by no final rule. As a rule which meets most situations, when an executive board has regulatory functions, it may hear and determine controversies which are incidental thereto, but if the duty is primarily to decide questions of legal right between private parties, the function belongs to the judiciary. Courts of justice, in their popular sense, may not be set up and established in the executive organization. They pertain exclusively to the branch of the judiciary."

The court advised that the statute proposed would be unconstitutional for conferring judicial power.

The opinion in the New Hampshire court is the only one in the books directly laying down the rule that administrative boards are limited to the exercise of such judicial powers as are incidental to administration of the statutes committed to them to administer, but the proposition is inferentially supported by what is said in *Crowell v. Benson,* 285 U. S. 22, 52 Sup. Ct. 285, 76 L. Ed. 598, in course of discussion whether judicial review is essential to "due process." It is there said that the legislature may confer upon administrative boards the power to determine all facts, determination of which is essential to the proper administration of the statute the legislature has given them to administer, but this does not imply that there is "no limitation of their use, and that the congress could completely oust the courts of all determinations of fact by vesting the authority to make them with finality in its own instrumentalities or in the executive department. That would

be to sap the judicial power as it exists under the federal constitution, and to establish a government of a bureaucratic character alien to our system, wherever fundamental rights depend, as not infrequently they do depend, upon the facts, and finality as to facts becomes in effect finality in law." Page 57. The question is one "of the appropriate maintenance of the federal judicial power in requiring the observance of constitutional restrictions. [Separation of power into legislative, executive, and judicial.] It is the question whether the congress may substitute for constitutional courts, in which the judicial power of the United States is vested, an administrative agency . . . for the final determination of the existence of the facts upon which the enforcement of the constitutional rights of the citizen depend." Page 56. The statements in the *Crowell Case, supra,* as to the "appropriate maintenance of judicial power" are based on the division of governmental power under the United States constitution into legislative, executive, and judicial. The same division is made by the state constitution. Thus what is above quoted from the *Crowell Case* is applicable to enactments of the state legislature.

I have been unable to find any case in the books where the trial of a lawsuit has been committed to an administrative agency of the executive branch of the government. That this has been attempted by (8a) seems to me too plain for argument. Nor have I been able to find in the books a case where the determination of facts essential to constitute a cause of action if the case were in court has been submitted to any officer, board, or commission for determination, except when the officer, board, or commission was administering the statute under which the determination had to be made. In both the opinion of the court and the dissenting opinion in the *Crowell Case, supra,* wherein a multitude of decisions are cited, every decision cited involved and every statement made referred to a decision by administrative officers, boards, or

commissions administering a statute, and the determination of the questions involved was essential to proper administration of the statute being administered. Although decisions by administrative tribunals have been in fashion for many years, some of them for forty or fifty years, this is the first time, I believe, where attempt has been made to submit to an administrative officer, board, or commission a question of fact for determination except as such administration was connected with the administration of a statute being administered.

In my opinion the case of *State ex rel. McCurdy v. Tappan, supra,* sustains the view of judicial power above stated. The case was *mandamus* to compel the clerk of the town of Oshkosh to enter upon the rolls of the town a tax, as required by the terms of an act of the legislature, to pay a soldiers' bounty, when the town had not voted to pay soldiers' bounty, as the statute of the state authorized towns to do. The act was plainly unconstitutional for other reasons, as the court had decided before reaching the question of the conferring of judicial power. The act also provided for inserting the costs and expenses incurred by the relator in previous attempts to collect the bounty, and vested in the circuit judge the power to determine the amount of these costs and expenses and certify the total to the town clerk for insertion in the tax roll. The court considered whether the constitutional provision conferring judicial power upon the courts rendered the act of the legislature involved unconstitutional. In passing upon this question the opinion states (p. 684) :

"The town of Oshkosh has steadily and constantly denied its liability to pay any part of the claim of the relator. The power to decide whether the town is under any legal obligation to pay the same or any portion thereof is vested by the constitution exclusively in the courts. The constitutional provision in that behalf, by necessary implication excludes the legislative or executive branches of the state government

from the exercise of judicial powers. These powers must be exercised by the courts alone, and any act which by its terms confers them upon any officer or person or other tribunal, is absolutely void."

The doctrine of the above quotation was inferentially approved in *State ex rel. Brown County v. Myers,* 52 Wis. 628, 631, 9 N. W. 777.

It is not without bearing upon the proposition that (8a) attempts to confer judicial power that this court recently said in *Milwaukee County v. Industrial Comm.* (1938) 228 Wis. 94, 279 N. W. 655, that (8a) vests in the Industrial Commission "a purely judicial function." That statement was deliberately made and expressed, I believe, the deliberate opinion then entertained by every member of the court. I then understood the statement to mean and now understand it to mean that (8a) confers such judicial powers as can only be exercised by courts.

I see no inconsistency between anything either said or decided in any case cited in the opinion of the court herein and the proposition that an administrative body can exercise no judicial power except such as is incidental to the administration of a statute given to it by the legislature to administer and such as is reasonably necessary to the proper administration of that statute. The case of *Forest County v. Langlade County,* 76 Wis. 605, 45 N. W. 598, is most strongly relied on. The commissioners in that case were administering a statute expressly given them to administer by the legislature. It is a far reach from that case wherein a statute was given a commission to administer that involved only a single matter, to the instant attempt to confer power on the Industrial Commission to hear, try, and determine the multitude of actions that have arisen under the poor laws during the prevalent economic depression. It is stated in the opinion of the court that "no individual rights are involved, either directly or

remotely, and the constitutional guaranties as to individual rights for that reason have no application." No authorities are cited to this proposition, and I have found none so holding. The *Forest County Case, supra,* does not so hold. It only throws out the inquiry whether such may not be the case. I do not assent to that proposition. The constitutional guaranties applicable to individuals under the Fourteenth amendment apply to corporations. A town or a village or a city is a corporation. It is my understanding that when a claim is made against one municipality by another based upon a statute the municipality has the same right to insist on observance of constitutional guaranties that it has when a statutory claim is made against it by an individual, as in the town of *Oshkosh Case, supra.* If not, why not? Or has a town no constitutional rights in any case? I do not understand the opinion of the court herein so to imply. The implication rather is that a town has constitutional rights against individuals making claims against it based upon a statute.

It is urged in some of the briefs that the conferring of the judicial power on the commission by the statute was proper as incidental to administration of the relief funds given to the state by the federal government, and the funds raised under several state tax statutes to be devoted to relief, fifty per cent of it to local relief. In doing this the commission was not administering the poor laws comprised in ch. 49, Stats., or any part of them. It was only distributing relief funds having no relation to or connection with the administration of those laws. I consider this too slender a thread to support the exercise of judicial power that (8a) purports to confer. I may say further that the distribution of those funds has been taken away from the Industrial Commission by executive order, as shown by the files in the secretary of state's office of which we may take judicial notice. The commission not only has nothing to do with the administration of the poor

laws, but it has nothing to do with the distribution of federal or state relief funds. There is not now even the slender thread above referred to upon which to hang the commission's exercise of judicial power.

WICKHEM, J. (*dissenting*). I agree that it is competent for- the legislature to make such allocation of the duty of poor relief to the several political subdivisions as it deems necessary, proper, and convenient, and that it is wholly unnecessary for it to create any cause of action in favor of a municipality furnishing relief against another which should more properly bear the burden. Having selected a basis for allocating these burdens it may commit to an existing administrative body or one created for that purpose, even though the latter has no other administrative function to perform with respect to poor relief, the duty of finding the facts essential to the allocation. If that is what was done here, the majority opinion is entirely correct. The difficulty that I have been unable to overcome is that for some time prior to the enactment of sec. 49.03 (8a), Stats., there had existed by statutory creation a cause of action in favor of a county which had paid for the relief of a pauper having a legal residence elsewhere against the municipality of residence. This action was triable in the courts in the same manner as other actions. Without exercising its undoubted power to destroy or modify this cause of action, the legislature committed its trial and determination to the Industrial Commission. Sec. 49.03 (8a) should, of course, be treated as committing only fact-finding functions to the commission, if that construction is possible even though it is not the most obvious construction, but it is so clear in this respect that I find it impossible to cut down its effect by any construction that I can give it. It states that the action shall be tried with pleadings just as in an action in court, that the rules of evidence shall apply,

and that counterclaims may be filed and determined. In one place it refers to the commission's determination as a judgment. It provides a type of appeal similar to that from a judgment of a court. From the section as a whole it appears that the cause of action, whatever its content, has not been changed but its trial and determination committed to an administrative body. This, I think, may not be done under rules stated in both the majority opinion and that of Mr. Justice FOWLER.

I am authorized to state that Mr. Justice FAIRCHILD concurs in this opinion.

A motion for a rehearing was denied, with $25 costs, on February 7, 1939.